In the Interest of J.P.B. and C.R.B., Minor Children,

A.B., Natural Mother, Appellant.

C.R.B., Minor Child, Cross-Appellant.

No. 86–1495.

Supreme Court of Iowa.

Feb. 17, 1988.

Michael T. Hines of McCarthy & Lammers, Davenport, for appellant-mother.

Bobbi M. Alpers, Davenport, for cross-appellant minor child.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellees.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This is an appeal by a mother (A.B.) and a cross-appeal by her thirteen-year-old daughter (C.B.) from a juvenile court decision which terminated the parent-child relationship between the mother, her daughter, and nine-year-old son (J.B.). C.B., who opposed the termination, claims that she was denied her constitutional right to effective assistance of counsel because her court-appointed attorney also represented her brother J.B. who favored termination. The mother, A.B., claims that her attorney's failure to object to the conflict of interest inherent in the dual representation of her children severely prejudiced the outcome of the case. We affirm.

I. In April 1986, after years of social service agency involvement with this troubled family, the State petitioned to terminate A.B.'s parental relationship with C.B. and J.B. As grounds for termination, each petition cited Iowa Code section 232.116(5) (1985); that is, the children have previously been adjudicated in need of assistance (CINA), custody of the children had been transferred from the parent for at least twelve of the preceding eighteen months, and the child could not safely be returned to the parent's custody.[1]

---

1. By these petitions the State also sought to terminate the parental rights of the fathers of C.B. and J.B. under Iowa Code § 232.116(2) (abandonment). Though properly served with notice of the petition, neither father has appeared or contested the termination. Thus only

The petitions were consolidated for hearing. In accordance with section 232.113, the juvenile judge appointed an attorney for the mother, an attorney for the children (Preacher), and a guardian ad litem for the children.

At the hearing, the parties stipulated to findings concerning the children's CINA status and their foster care placement for longer than twelve months. The only real issue to be tried, therefore, was whether the State could prove by clear and convincing evidence that the children could not be returned to the custody of their mother without suffering harm. *See* Iowa Code §§ 232.116(5)(c), 232.102(4); *In re D.W.*, 385 N.W.2d 570, 573–74 (Iowa 1986).

In support of the petitions, the State called fifteen witnesses who had professionally evaluated or worked with A.B., C.B. or J.B. at some point since 1980. All were cross-examined by counsel for A.B., Preacher and the guardian ad litem. When the State rested, attorney Preacher presented the opposing views on termination held by his clients C.B. and J.B., but called no witnesses. A.B. then testified on her own behalf, offering the testimony of two lay witnesses with little or no knowledge of her parenting ability. She also called C.B. as a witness. At the insistence of the juvenile judge, and without objection by counsel, C.B. was questioned in camera, but on the record.

This opinion would be unduly lengthened, and our jurisprudence little advanced, by a detailed recitation here of the evidence revealed in support of the petition to terminate. Briefly stated, initial investigations and services furnished by the Department of Human Services ranged from concern about housekeeping, hygiene, child supervision, and confused generational boundaries, to substantiated allegations of incest and other sexual abuse. For example, in 1983 one of A.B.'s boyfriends was convicted and incarcerated for sexually abusing C.B. The record reveals that A.B., who was a victim of her own father's incestuous behavior, suspected the abuse at least a year before it was reported. Even after both children were placed in foster care, continuing abuse by family members and boyfriends during visitation periods was reported. In 1985, and again in early 1986, investigations prompted by J.B.'s disruptive behavior in the foster home and at school led to his candid revelation of being picked up in a car before school by A.B. and her relatives where he became an unwitting participant in a variety of sexual acts which he referred to as "the game." Similarly alarming complaints by C.B., plus nonverbal cues such as vaginal infections and compulsive bathing following extended visits in A.B.'s home, led protective service workers to suspect continuing sexual abuse despite her protestations to the contrary. In summary, the evidence overwhelmingly suggested that despite extensive professional counseling, A.B. was unwilling, or unable, to separate herself and the children from the influence of a family plagued by a history of incestuous behavior.

Neither of the appellants claim that the evidence presented is insufficient to support the juvenile court's decree terminating parental rights by the requisite standard of proof. Appellants' sole claim on appeal is that the conflict of interest inhering in Preacher's dual representation of the children's opposing interests led to a trial that cannot be relied upon as having produced a just result. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

II. Before considering appellant's substantive challenge, we must address a preliminary question concerning preservation of error.

The State argues that the question of ineffective assistance of counsel premised on dual representation has not been properly preserved for review on appeal because neither counsel for C.B. or A.B. objected to the appointment before the trial court. Counsel for A.B. points out, however, that in previous cases we have held that the lack of objection to an alleged conflict of interest did not preclude consideration of the issue on appeal. *See State v. Neal*, 353

the rights of the mother are at issue in this appeal.

N.W.2d 83, 86 (Iowa 1984); *State v. Don*, 318 N.W.2d 801, 807 (Iowa 1982).

■ We find the rationale of those cases equally applicable here. Since there is no procedural equivalent to postconviction relief for proceedings to terminate parental rights, and because counsel's failure to object might in itself constitute ineffective assistance, direct appeal is the only way for appellants to raise the issue. Finding no merit in the State's contrary argument, we proceed to a discussion of the standards for measuring the adequacy of counsel's performance.

III. We have only recently had our first opportunity to consider a claim of ineffective assistance of counsel in the context of a proceeding to terminate parental rights. In *In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986), we noted that because the proceedings were civil, not criminal, no sixth amendment constitutional protections were implicated. *Id.* Nevertheless, because due process requires counsel appointed under a statutory directive to provide effective assistance, we applied the same standards adopted for counsel appointed in a criminal proceeding:

> The *Strickland* principles require the party claiming ineffective assistance of counsel to show (1) that counsel's performance was deficient, and (2) that actual prejudice resulted. Unless both showings are made, the claim must fail. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Our scrutiny of the CHINA counsel's performance must "be highly deferential," *id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [party] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, 104 S.Ct. at 2066, 80 L.Ed.2d at 694–95.

*D.W.*, 385 N.W.2d at 579–80. Where the alleged ineffectiveness of counsel derives from a conflict of interest, prejudice is presumed. *Strickland* 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 689, (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345–50, 100 S.Ct. 1708, 1716–19, 64 L.Ed.2d 333, 344–48 (1980)). The presumption is justified by the difficulty in measuring precisely the effect of a defense corrupted by conflicting interests. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. Even so, a per se rule is not applied. In *Cuyler*, the Supreme Court held that in order to demonstrate a violation of sixth amendments rights, a defendant must establish that an *actual* conflict of interest adversely affected the lawyer's performance. 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348 (emphasis added). In Iowa we have adopted a less stringent standard, stating "it is enough if there is a 'substantial possibility' that a conflict of interest affected the lawyer's representation." *Nichol v. State*, 309 N.W.2d 468, 470 (Iowa 1981); *Jackson v. Auger*, 239 N.W.2d 180, 183 (Iowa 1976); *Bumgardner v. State*, 401 N.W.2d 211, 213 (Iowa App.1986).

With these principles in mind, we address C.B.'s contention that Preacher's simultaneous representation of J.B. constituted a conflict of interest sufficient to create a substantial possibility that C.B.'s representation was adversely affected. Appellant claims that because J.B. favored termination and C.B. wanted to return to her mother's home, Preacher could not represent both of them with the full loyalty and zeal necessary for effective assistance. Under the standard established in *Cuyler v. Sullivan*, she claims prejudice need not be shown.

For two reasons, we find appellant's argument unpersuasive. First, the contention that a conflict existed is factually unsupported in the record. Second, without departing in principle from *D.W.*, we are persuaded that this case aptly illustrates the inadvisability of mechanically applying criminal law standards to a civil juvenile proceeding where the resolution turns not on guilt or innocence, but on the best interest of the child. We shall consider these points in turn.

A. We begin with the proposition that J.B. and C.B. wanted different outcomes

for the termination proceeding. It is also undisputed that J.B.'s statements alleging involvement by A.B. in continuing sexual abuse was a primary factor in the juvenile court's determination that the children could not be safely returned to their mother. Were appellant attempting to sustain such a claimed conflict of interest in a criminal context, she would have to

> point to "specific instances in the record to suggest an actual conflict or impairment of [her] interest." Appellant[s] must make a factual showing of inconsistent interests and must demonstrate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." ... an actual conflict exists when the respective defenses of multiple defendants are inconsistent, i.e., if "introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing."

*United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983) (citations and quoted authorities omitted); *see also United States v. Mooney*, 769 F.2d 496, 499 (8th Cir.1985).

■ Appellant claims that Preacher's dual representation prevented him from meaningfully cross-examining or testing J.B.'s accusations or presenting additional evidence of the psychological trauma which C.B. would suffer in case of termination. Such claims are not only hypothetical, they are not borne out by the record. Preacher vigorously cross-examined the State's witnesses, questioning them concerning the reliability of J.B.'s statements and at the same time eliciting corroboration of C.B.'s denial of continuing abuse and consistent desire to return to her mother's home. Appellant is unable to state what other or different witnesses might have been called or what further evidence could have been adduced to strengthen C.B.'s position. If anything, the record reveals a substantial effort on Preacher's part to discredit J.B.'s testimony to the benefit of C.B.

■ B. More importantly, appellant overlooks two distinct features of a juvenile court proceeding which fundamentally distinguish it from its criminal counterpart. First, neither C.B. nor J.B. can be blamed for the circumstances which precipitated these proceedings. Thus Preacher was not faced with the dilemma of presenting evidence which would exonerate one child at the expense of the other. Secondly, the very reason for contested custody proceedings is that the children involved are not yet mature enough to be self-determining. It is the best interests of these minor children, not their wishes, which determine the outcome of the case. In other words, their real interests are not inconsistent or mutually exclusive.

We are mindful that in the ordinary lawyer-client relationship, the lawyer's role is not to *determine* the client's interest but to *advocate* the client's interest. *See* Iowa Code of Professional Responsibility for Lawyers DR7–101 (representing a client zealously requires that a lawyer shall not intentionally fail to seek the lawful objectives of a client). Such a duty may present an ethical dilemma in a juvenile proceeding where the objective is *always* the best interest of the child, not the child's personal objective. We are aware that the unsettled law in this area offers no clear direction to an attorney faced with such a predicament. *See generally* Horowitz & Davidson, *Tough Decisions for the Tender Years*, 10 Fam.Advoc., Winter 1988, at 9.

The Montana supreme court, thoughtfully confronting this dilemma in the context of disputed custody in a divorce, resolved the problem this way:

> We recognize that ... the attorney for the child is not a guardian ad litem. Nevertheless his role in a custody dispute is to advocate the child's best interest, not the child's wishes. This is a difficult role, particularly when the child's expressed wishes conflict with the attorney's determination of his best interest. But, given the immaturity of the

client and the pressures that often exist in a divorce situation, it is this Court's opinion that the best interests of the child, the paramount concern in all custody disputes, is best served by modifying the traditional lawyer-client relationship.

. . . .

This Court is aware that determining a child's best interests is difficult and is concerned about the child's right to an advocate. We reiterate our position that a child's wishes deserve serious consideration. If the court-appointed attorney concludes that the child's expressed wishes are not in his best interest the attorney must disclose this to the court. The district court must be clearly informed of the child's wishes and the basis for the attorney's determination that it is not in the child's best interest to live with the preferred parent.

*In re Marriage of Rolfe*, 699 P.2d 79, 86–87 (Mont.1985) (citation omitted). We find such a pragmatic approach appealing. It gives priority to the paramount goal of discerning the child's best interest while enabling the lawyer to advocate an opposing viewpoint without fear of ethical violation. Moreover, such an approach obviates the expensive and burdensome practice of appointing both a guardian ad litem and attorney for each child in a family to ensure that the child's expressed wishes as well as best interest are advocated.

The practical application of such an approach in cases like the one before us is this: A juvenile claiming ineffective assistance of counsel in a civil proceeding must prove both prongs of the *Strickland* test, i.e., deficiency in counsel's performance *and* actual prejudice. Because of the unique nature of juvenile proceedings, we are unwilling to presume prejudice even if under ordinary criminal standards a substantial possibility of conflict would be shown. To the extent that *In re D.W.* suggested that we would always apply the "same standards adopted for counsel appointed in a criminal proceeding," 385 N.W. 2d at 579, that opinion is hereby modified.

IV. We are not persuaded that the performance of C.B.'s court-appointed counsel was deficient or that his simultaneous representation of her brother prejudiced the achievement of C.B.'s desired result or the primary goal of discerning her best interest. For the same reason, the failure of A.B.'s counsel to object to the dual representation cannot support her claim of ineffective assistance. Because no other grounds of ineffective assistance are claimed which would discredit the overwhelming evidence supporting termination, we affirm the judgment of the district court.

AFFIRMED.