**IN THE COURT OF APPEALS OF IOWA**

No. 15-0272
Filed July 9, 2015

**IN THE INTEREST OF D.J., AND T.H.,**
**Minor Children,**

**R.J., Father,**
**Appellant,**

**K.H., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Dickinson County, David C. Larson, District Associate Judge.

A mother appeals the termination of her parental rights to her children. The father of one of the children also appeals the termination of his parental rights. **AFFIRMED ON BOTH APPEALS.**

Bethany Brands, Spirit Lake, for appellant father.

Roy K. Jones, Fort Dodge, appellant pro se.

Melinda Roman, Spirit Lake, for appellant mother.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Jon M. Martin, County Attorney, and Travis Johnson, Assistant County Attorney, for appellee State.

Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, J.**

A mother appeals the termination of her parental rights to her children. The father of one of the children also appeals the termination of his parental rights.

## I. Background Facts and Proceedings

The mother gave birth to her older child in 2008, when she was just fifteen. By her own admission, she was not ready to be a parent.

In 2012, the mother met the father of her younger child and began a relationship with him. The child was born in 2013. The mother, who abused substances for several years, added methamphetamine to her drugs of choice.

The father also abused substances, including methamphetamine. His drug use exacerbated his existing propensity for violence. He repeatedly threatened to kill the mother and, in the spring and summer of 2013, twice strangled her, almost to the point of unconsciousness.

After the first strangulation episode, the district court entered a no-contact order to protect the mother. The mother disobeyed the order and moved in with the father. The second strangulation occurred shortly thereafter, in the presence of the children.

The State applied to have the children removed from the mother's custody. Although the mother had already moved the children to her mother's home, the district court formally transferred the children to the custody of the Iowa Department of Human Services for placement in the grandmother's care.

The mother persisted in maintaining a relationship with the father of her younger child. The relationship continued until January 2014, when the father

entered prison on convictions of domestic abuse assault by strangulation involving the mother as well as another woman. At the time of sentencing the district court entered a five-year no-contact order in favor of the mother. The court later declined the mother's request to terminate the order. The father remained incarcerated at the time of the termination hearings.

Meanwhile, the mother's abuse of methamphetamine escalated and, by the spring of 2014, she was intravenously injecting the drug into her neck to gain a faster high. The mother was arrested in March and pled guilty to possession of drug paraphernalia. She agreed to enter inpatient treatment to avoid incarceration, but stayed for only a day. Seventeen days later, she was again arrested for leaving the court committal. She returned to the treatment center and successfully completed the program in August 2014. At the time of the termination hearings, she was participating in outpatient treatment and living with her father and a third child, born in the interim.

Following a series of termination hearings over a two month period, the district court terminated the parental rights of both parents. Both parents appealed.

## II. Mother

The mother contends the record lacks clear and convincing evidence to support the district court's finding that the children could not be returned to her custody. *See* Iowa § 232.116(1)(f), (h) (2013). On our de novo review, we disagree.

While the mother tested negative for illegal substances during the six to seven months preceding the termination hearings, she had been living outside a

treatment center for just two of those months and had yet to live independently. Her father testified, "She's not ready to move out." A service provider who supervised visits between the mother and children stated she had safety concerns with moving to unsupervised visits "because of [the mother's] history with drug use, some of her history as far as with the choices that she has made as far as with the company that she keeps, those type of things, housing, stability, there was no stability there as well." Similarly, the department employee overseeing the case testified she did not support return of the children to the mother "because the children have their own special needs and [the mother] would need to show proof to me or to the system that she's in a strong recovery." Even the mother's counselor—who characterized her participation in treatment as "amazing"—stated they were probably looking at four to six months of ongoing therapy. Based on this record we agree with the district court that the children could not be returned to the mother's custody.

The mother also requests six additional months to reunify with the children. *See* Iowa Code § 232.104(2)(b). We are not convinced an extension of time was warranted. While the mother had extensive family support and showed a recent commitment to sobriety, the needs of the children supported termination. The older child was diagnosed with posttraumatic stress disorder based, in part, on his exposure to domestic violence, and the younger child tested positive for drugs in her system and required a special feeding regimen. Both children were thriving in the care of their grandmother, and certain professionals predicted the older child would regress without certainty about his future.

We affirm the district court's decision to terminate the mother's parental rights to these children immediately.

### III. Father

The father raises the following arguments: (A) he was "denied notice of legal proceedings," (B) he was denied visitation, (C) the department failed to make reasonable efforts toward reunification, (D) his appointed attorney was ineffective, (E) the department failed to protect the children, and (F) the termination order contained inaccuracies.

**(A)** The father contends the department interviewed him in connection with its child abuse investigation but "was not made aware that this was to include a temporary removal of the children."

The record reflects the department sought an ex parte order for removal of the children, which was granted. The district court subsequently issued a "notice and order setting hearing on temporary removal pursuant to Iowa Code section 232.95." The notice stated it was to be "personally served upon [] all parties." While the father failed to appear at the hearing, we cannot ascribe his non-appearance to a failure of notice, given the district court's express order requiring notice.

In any event, there is no question the father received notice of subsequent proceedings, was appointed an attorney, and participated in the proceedings. His voluntary appearance and acquiescence in the jurisdiction of the court amounted to a waiver of the right to challenge notice issues concerning the temporary removal hearing, if any existed. *See In re J.F.*, 386 N.W.2d 149, 152 (Iowa Ct. App. 1986).

**(B), (C)**  The father next contends "improved" visitation was delayed and, on his incarceration, his request to send items to his child and communicate with her was delayed.  We construe this argument as a challenge to the State's obligation to make reasonable efforts towards reunification of parent with child. *See In re C.B.*, 611 N.W.2d 489, 493-94 (Iowa 2000).  Accordingly, we examine this argument in connection with the father's reasonable efforts challenge.

The district court ordered the department to furnish the father visits with his child "at its discretion."  The department facilitated visits, first at law enforcement facilities, given the father's propensity for violence, then at a church. The father missed a significant number of the scheduled visits, calling into question his request for "improved" visitation.  Following his incarceration, the department afforded him weekly telephone calls with the child.  We conclude the department satisfied its reasonable efforts mandate.

**(D)**  The father next contends his attorney was ineffective in failing to make closing arguments and failed to follow-up on pro se motions he filed.  The father possesses a right to effective assistance.  *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988) (applying *Strickland v. Washington*, 466 U.S. 668, 687 (1984) two-prong analysis as standard in termination of parental rights appeals).  His attorney provided effective assistance over the course of a four-day hearing. Indeed, on the last day of the hearing, the attorney elicited extensive testimony from the father about the department's recommendations, his compliance with those recommendations, and his future prospects.  We discern no breach of essential duty on the attorney's part, and need not address the remaining prong.

*See In re D.P.*, 465 N.W.2d 313, 316 (Iowa Ct. App. 1990) (declining to consider effectiveness of counsel as mother could not show prejudice).

**(E)** The father next contends the department failed to protect the children from their mother. To the contrary, the department took steps to ensure the children were formally removed from her care. The department also provided supervision for her visits with the children and furnished services to assist her in addressing her addictions. In short, department personnel were fully cognizant of protective concerns involving the mother and addressed those concerns.

**(F)** Finally, the father takes issue with certain aspects of the termination order, including the court's failure to grant him additional time to reunify with the child. We find this argument unpersuasive. The father jeopardized the health and safety of his child by exposing her to drug use and violence. On one occasion, while high on methamphetamine, he smashed the child's empty crib with a hammer. We conclude additional time for reunification was not warranted.

We affirm the termination of the father's parental rights to his child.

**AFFIRMED ON BOTH APPEALS.**