**IN THE COURT OF APPEALS OF IOWA**

No. 15-0031
Filed November 12, 2015

**IN THE INTEREST OF D.F., S.R.,**
**A.A., and G.A.,**
    **Minor Children,**

**J.M., Mother,**
    Appellant,

**S.R., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


A mother and father appeal separately from the order terminating their

parental rights.  **AFFIRMED ON BOTH APPEALS.**


Susan R. Stockdale, Windsor Heights, for appellant-mother.

Alexander Smith of Burdette Law Firm, P.C., Clive, for appellant-father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and

Kathryn K. Lang, Assistant Attorneys General, for appellee.

John Jellineck of Youth Law Center, Des Moines, attorney and guardian

ad litem for minor children.


Considered by Doyle, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

The mother of four children and the father of D.F. appeal separately from the termination of their parental rights. Upon our de novo review, we find clear and convincing evidence supports the termination of both parents' parental rights and affirm.

I. **Background Facts and Proceedings**

Jessica is the mother of four children, D.F., born in October 2003, S.R., born in August 2005, A.A., born in October 2009, and G.A., born in January 2011. Samuel is the biological father of D.F.

In July 2013, the children were removed from Jessica's care due to her methamphetamine usage and failure to provide proper supervision for the children. The Iowa Department of Human Services (DHS) conducted a child abuse assessment in which it found that Jessica frequently used methamphetamine while caring for the children. She admitted that because of her mental health issues, she had a difficult time leaving her bedroom and meeting her children's emotional needs. In August 2013, the State filed a child-in-need-of-assistance (CINA) petition.

In September 2013, the children were adjudicated CINA and their removal from their mother's custody was confirmed. The juvenile court held dispositional and review hearings in October 2013 and January 2014, confirming the CINA adjudication and out-of-home placements. In May 2014, the State filed a petition to terminate the mother's parental rights as to A.A. and G.A. In June 2014, the juvenile court held a permanency hearing. In July 2014, the State filed a petition

to terminate the mother's parental rights as to D.F. and S.R. and the father's parental rights as to D.F. The hearing began on the petitions in August 2014 and concluded in October 2014.

At the conclusion of the hearing, the two youngest children, A.A. and G.A., were in a pre-adoptive foster home, having been placed there in September 2013. S.R. was also in a pre-adoptive foster home after moving between multiple placements. D.F. was then in a youth shelter, after multiple unsuccessful placements.

In December 2014, the juvenile court entered an order terminating the mother's parental rights to all four children pursuant to Iowa Code section 232.116(1)(d), (e), (f), and (h) (2013), and the father's parental rights to D.F. under section 232.116(1)(d) and (f). Both parents separately appeal.[1]

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the children. *See id.* at 776.

## III. Analysis

---

[1] The juvenile court also terminated the parental rights of the legal father of the four children and the biological father of A.A. and G.A., both of whom consented to the termination, as well as the putative biological father of S.R. and any unknown biological father of S.R. None of these fathers are involved in this appeal.

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interests framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interests framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weighs against the termination of parental rights. *Id.*

*A. Grounds for Termination*

Jessica argues the juvenile court erred in finding safety concerns that led to the removal of the children continued to exist at the time of the termination hearing.[2] When a juvenile court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.* at 706.

Iowa Code section 232.116(1)(f) provides that the court may terminate a parent's parental rights if the State proves by clear and convincing evidence the child (1) is four years of age or older; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least twelve of the last eighteen months, or the last twelve consecutive months and any trial period

---

[2] Samuel does not dispute that grounds for termination exist under section 232.116(1), thus we do not discuss this step with regard to him.

at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing. Iowa Code § 232.116(1)(f). Under section 232.116(1)(h), the court may terminate parental rights if the court finds that the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parent at the time of the termination hearing. Iowa Code § 232.116(1)(h).

D.F., S.R., and A.A. were all over the age of four years old at the time of the termination hearing and G.A. was age three. All of the children were removed from their mother's care in July 2013, were adjudicated CINA in August 2013, and remained out of her care and custody through the termination hearing held August 2014 through October 2014 without any trial periods at home. Jessica admitted that she did not start working toward reunification with her children until May 2014, almost ten months after her children were removed and only one month before the permanency hearing. Jessica also admitted that the children could not be returned to her care at the time of the termination hearing and instead requested a six-month extension.

At the start of the termination hearing, Jessica was living on her stepfather's couch and her children could not live with her there. Thereafter Jessica found a two-bedroom apartment on a one-year lease through Anawim

Housing, having admitted that she only applied for housing about a month prior to the start of the hearing. Jessica testified she was not employed, did not have a GED or job training, had never held a steady job, and her sole source of support is Supplemental Security Income benefits. She did not participate in visitation with the children between February and May 2014 due to her inappropriate behavior during visits and failure to contact DHS. Thereafter, she missed half of her visits in June and July 2014. Jessica had only attended six therapy sessions since reengaging in services in May 2014 despite acknowledging her unresolved mental health and anger issues.

Jessica skipped every drug screen DHS requested from January to May 2014, and admitted she did not make an effort to get clean until April 2014. And although she completed outpatient substance abuse services, she failed to complete the recommended inpatient treatment. Following her completion of the treatment program, she tested positive for methamphetamine in July 2014. The juvenile court found Jessica's explanation for the positive test incredible because she attributed her positive result to being around someone else who may have used methamphetamine. Additionally, Jessica has failed to recognize the domestic abuse that was present in her relationship with the biological father of A.A. and G.A. that both D.F. and S.R. had witnessed. Consequently, the children would remain at risk if returned to her care. Upon our de novo review, we agree with the juvenile court that the children could not be returned to Jessica's care at the time of the termination hearing. Thus, we find clear and convincing evidence

to support termination of the mother's parental rights under section 232.116(1)(f) as to D.F., S.R., and A.A. and paragraph (h) as to G.A.

### B. Best Interests Factors in Termination

Jessica argues that termination of her parental rights is not in the children's best interests as defined in section 232.116(2), especially as to D.F. who was placed in shelter care toward the end of the termination hearing due to his behaviors while in foster care. Iowa Code § 232.116(2). Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of the child after a review of section 232.116(2). *In re P.L.*, 778 N.W.2d at 37.

We have thoroughly reviewed the record before us "giv[ing] primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d at 777 (quoting *In re P.L.*, 778 N.W.2d at 41).

Jessica cannot provide a safe and stable home for her children. Although she made some limited progress in the months leading up to the termination hearing, she is unable to meet her own mental health and emotional needs and has failed to meet the mental and emotional needs of her children. This failure is especially clear in respect to D.F., whose severe behavioral issues since his

removal from Jessica's care are the result of her neglect and failure to meet his needs during the first ten years of his life. *See id.* at 778 ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'") (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)). Thus upon our de novo review of the record, we conclude that termination of the mother's parental rights is in the children's best interests.

*C. Exceptions or Factors Against Termination*

Both parents argue that an exception under section 232.116(3) applies with respect to D.F. because he is over ten years of age and objected to the termination of parental rights. Iowa Code § 232.116(3)(b). Samuel also contends that it would be detrimental to D.F. to terminate Samuel's parental rights because D.F. has a close relationship with him and D.F.'s future is uncertain if termination were to occur because at the time of the termination hearing he was placed in a youth shelter rather than a pre-adoptive placement. *See* Iowa Code § 232.116(3)(c); *see In re S.J.*, 451 N.W.2d 827, 833–34 (Iowa 1990). "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d at 113 (quoting *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011)).

We find that none of the permissive factors weigh against termination of the parents' parental rights here. Although D.F. turned eleven during the termination hearing, and the parents claim he objected to the termination, neither of the parents provided evidence that he objected to the termination of parental rights. D.F. did not testify before the court regarding his wishes. Instead, a former foster parent who had D.F. in his care for two months leading up to and during the first part of the termination hearing wrote a letter to the juvenile court discussing D.F.'s wish to "maintain[] contact and his relationship with his parents and his other relatives." The DHS worker testified that D.F. "wanted to go with either parent." However, the guardian ad litem (GAL) and attorney stated that he spoke with D.F. in August 2014 regarding the termination proceedings and although D.F. did not want to be adopted by another family unless by relatives or close family friends, he did not object to the process continuing.

We recognize that Samuel has made some limited progress. He consistently participated in visitation with D.F., except when D.F. refused to attend visits with him from January 2014 until April 2014. But Samuel knew from the initial removal that he needed to complete substance abuse treatment and quit using illegal substances. Samuel completed two outpatient treatment programs but continued to test positive for marijuana throughout the programs. From January to July 2014, DHS requested nineteen drug screens, five of which Samuel no-showed and eight tested positive. He last tested positive in July 2014. Samuel acknowledged that if he had been sober and able to demonstrate the he could be a safe caretaker for D.F., then D.F. would not have been moved

between six different placements throughout the case. Samuel has failed to financially support D.F. or otherwise provide for him. Samuel also was required to attend therapy to address his anger issues, and initially failed to engage in therapy. He was released from his provider in March 2014, and waited until August 2014 to reengage, after the termination-of-parental-rights petition had been filed.

Further, we do not find that the bond between D.F. and Samuel weighs against termination in this case. The record reveals D.F. did not confide in Samuel when he was experiencing issues in Jessica's home involving the living conditions of the home, domestic violence between Jessica and the biological father of A.A. and G.A. as well as physical abuse against D.F. for attempting to help Jessica during these situations, lack of access to food, and acting as a caretaker for Jessica. Further, during an unsupervised visit on Thanksgiving 2013, Samuel chose to disclose to D.F. that Jessica was using drugs and not doing well, which caused D.F. to decline in his foster placement and resulted in D.F. being placed in a shelter. D.F. refused to attend visits with Samuel from January until April 2014. Even after this, Samuel was allowed additional visits with D.F. at one of his shelter placements but he rarely took advantage of the opportunity. Samuel also made no effort to contact D.F. on his birthday in October 2014, while the termination hearing was ongoing and D.F. was residing in a youth shelter.

D.F. should not have to wait endlessly for his parents to get their lives together. *In re D.W.*, 791 N.W.2d at 707. Thus, we do not find clear and

convincing evidence that any of the permissive factors under section 232.116(3) apply here.

### D. GAL/Attorney Role

Finally, both parents argue that the GAL, who also served as the children's attorney, should have bifurcated his role because D.F. did not want parental rights terminated. This issue was raised by the court during closing arguments, and the court was satisfied with the GAL's explanation of his role. The parents contend that the juvenile court abused its discretion and that this conflict requires reversal and remand for a new termination-of-parental-rights hearing. *See In re A.T.*, 744 N.W.2d 657, 665–66 (Iowa Ct. App. 2007). Although counsel for either parent did not object to the alleged conflict of interest at the termination hearing,[3] we may consider this issue on appeal. *See In re A.T.*, 744 N.W.2d at 660 (citing *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988)).

The court has discretion to appoint a GAL separate from the child's attorney "if the same person cannot properly represent the legal interests of the child as legal counsel and also represent the best interest of the child as [GAL]." Iowa Code § 232.89(4). In *In re A.T.*, this court held that given the child's age and maturity, a separate attorney should have been appointed to represent the child's wishes. 744 N.W.2d at 666. In that case, the child was age twelve at the time of the termination hearing and the court found that the child "'was

---

[3] Neither parent moved for a mistrial during the hearing, even when the issue was discussed during closing arguments. In December 2014, Samuel filed a motion for mistrial and Jessica joined it arguing that the GAL should have bifurcated his role. The juvenile court found the motion for mistrial untimely, that it should have been made during the trial or immediately after instead of sixty days after trial.

impressive and demonstrated a maturity beyond her years.' She recognized her parent's shortcomings. While in foster placement she was abused. She was allowed to express her opinion to the court, but with the assistance of a guardian ad litem who did not share her goal." *Id.* at 660.

As discussed above, D.F. turned eleven during the termination hearing. Neither parent provided evidence that D.F. objected to the termination of their parental rights. Instead, the only evidence that was presented was through DHS and a letter by a former foster parent. The GAL/Attorney stated that based upon his conversation with D.F. in August 2014 that D.F. was not opposed to the proceedings going forward, he did not raise D.F.'s wishes separately before the juvenile court and argued only that termination was in the children's best interests. Further, the record does not suggest that D.F. is mature enough for his wishes to be the deciding factor in the court's determination. Indeed, D.F. has been moved between placements several times because he acts out through temper tantrums and the use of profanity. D.F. struggles when he is not the only child in a home and has to share attention. He refused to participate in visits with Samuel for several months. D.F. loves his parents and shares a bond with each of them, but he is unable to understand that his mother's mental health and substance abuse issues and his father's substance abuse issues are essentially the root cause of his own issues and behaviors and current situation.

Thus upon our de novo review of the record, we find D.F. is not of "sufficient age and maturity to make an informed decision about a potential termination" with his parents. *Id.* at 665. Therefore, we find the juvenile court did

not abuse its discretion in not appointing a separate attorney to represent D.F. in this matter.  We affirm the termination of the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**