# IN THE COURT OF APPEALS OF IOWA

No. 17-1846
Filed January 24, 2018

**IN THE INTEREST OF K.J., R.J., and A.J.,**
**Minor Children,**

**N.J., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Clay County, Charles K. Borth, District Associate Judge.

A mother appeals the termination of her parental rights to three children. **AFFIRMED.**

Bethany J. Verhoef Brands of Brands Law Office, Spirit Lake, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Shannon L. Sandy of Sandy Law Firm, P.C., Spirit Lake, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to three children, born in 2007, 2009, and 2012.

## I.     *Background Facts and Proceedings*

The department of human services became involved with the family in 2012 based on the parents' conduct with respect to an older child.  The parents signed a safety plan to address issues relating to that child.  He was eventually transferred to foster care pursuant to a voluntary placement agreement.

In 2014, the State petitioned to have all four children adjudicated in need of assistance.  The district court granted the petition and ordered custody of the three involved in this appeal to remain with their parents subject to department supervision.

The children were removed from the parents' custody in the fall of 2015 after it was alleged their father assaulted the mother in the children's presence and threatened to kill himself, and the mother "took no steps to contact law enforcement or protect herself or the children."  The children were eventually reunited with the father.  They remained out of the mother's care through the termination hearing two years later.

The mother stipulated to the statutory grounds for termination pled by the State.  The termination hearing proceeded on a single issue: whether termination was in the children's best interests.  *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).  The mother was present at the hearing but did not testify.  Following the hearing, the juvenile court concluded termination was in the children's best interests.  The mother appealed.

Meanwhile, the mother's trial attorney moved to withdraw from the appeal based on extraordinary circumstances. The Iowa Supreme Court granted the motion and substitute appellate counsel was appointed. The mother argues her trial attorney was ineffective in (1) "failing to present evidence supporting her claim that termination of her parental rights was not in the children's best interests" and (2) failing to ascertain on the record whether her decision not to testify at the termination hearing "was a knowing, voluntary decision with a full understanding of the potential implications."

## II. Ineffective Assistance

In *In re D.W.*, the Iowa Supreme Court assumed "due process requires counsel appointed under a statutory directive to provide effective assistance." 385 N.W.2d 570, 579 (Iowa 1986). The court applied the *Strickland* standard, which mandates proof of deficient performance and actual prejudice. *Id.*; *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court later modified the opinion to clarify the standard in cases involving a conflict of interest and emphasized there would be no presumption of prejudice in juvenile proceedings. *See In re J.P.B.*, 419 N.W.2d 387, 392 (Iowa 1988) ("Because of the unique nature of juvenile proceedings, we are unwilling to presume prejudice even if under ordinary criminal standards a substantial possibility of conflict would be shown. To the extent that *In re D.W.* suggested that we would always apply the 'same standards adopted for counsel appointed in a criminal proceeding,' 385 N.W.2d at 579, that opinion is hereby modified.").

### A. Failure to Present Evidence on Best Interests

The following facts inform the issue of whether the mother's trial attorney was ineffective in failing to present evidence on the children's best interests. At the beginning of 2017, the mother was afforded weekly visits with the children. Due to her inconsistent attendance, the department transitioned her to biweekly visits and then, monthly visits. According to the department case manager, the mother saw one of the three children twice in seven months and the other two children three times during that period. The department eventually suspended in-person visits but facilitated twice-weekly telephone calls.

The mother availed herself of the telephonic contacts. These contacts did little to strengthen her frayed bond with the children. As the case manager stated, "every service possible" was made available to the mother to facilitate "consistent contact and visitation with her children," to no avail. The result was "emotional and mental harm" to the children. In his words, "I don't know how there can be a bond in two visits in seven months or three visits in seven months. . . . The false promises their mother has made to them has absolutely caused them to feel unsettled, and that's a lot for . . . children these age[s] to take on." He opined the bond the mother shared with the children was "in . . . free fall."

The case manager acknowledged the mother's mental-health diagnoses were "a big contributing factor" in her lack of consistency. But the department facilitated the provision of mental-health services. The mother only sporadically participated in those services, and although she became more consistent as the termination hearing drew near, her report on the extent of her participation diverged from the report of her therapist.

Notably, the children's turmoil dissipated after visits were suspended. In the case manager's words, the children's "issue of are we going to see Mom or not see Mom or Mom is supposed to come and Mom doesn't come is gone." He opined it would not be detrimental to the children to terminate the mother's parental rights because the mother had "already terminated her rights to the children through lack of interest, through lack of contact, through lack of consistency."

Given the mother's lengthy failure to take advantage of reunification services, her trial attorney would have been remiss in calling her as a witness and subjecting her to cross-examination on her inconsistencies. We conclude he did not breach an essential duty in electing to instead address the best interests issue through cross-examination of the State's witnesses.

### B.      Failure to Testify

The mother suggests her trial attorney should have made a record on the voluntariness of her decision not to testify at the termination hearing. The mother cites no authority for this proposition. The mother was present at the termination hearing but, as explained, the attorney reasonably could have determined that putting her on the stand would have done more harm than good. We conclude counsel breached no essential duty in failing to make a record on the reasons for the mother's failure to testify.

We affirm the termination of the mother's parental rights to these children.

**AFFIRMED.**