# IN THE COURT OF APPEALS OF IOWA

No. 23-1163
Filed November 8, 2023

**IN THE INTEREST OF T.O.,**
**Minor Child,**

**D.O., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Jones County, Joan M. Black, District Associate Judge.

A notice of appeal was filed on behalf of the mother by counsel without the mother's signature. **APPEAL DISMISSED.**

Robin L. Himes, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Craig Elliott, Anamosa, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A notice of appeal from an order terminating the mother's parental rights was filed on behalf of the mother, D.O., by her counsel. The State moved to dismiss, claiming the court did not have jurisdiction to consider the appeal because the notice of appeal was not signed by the mother. The notice of appeal did not meet the requirements found in Iowa Rule of Appellate Procedure 6.102(1)(a) to appeal the termination of parental rights. And the mother did not substantially comply with the requirements of the rule. We determine that we lack jurisdiction to consider the notice of appeal that was not signed by the mother. Accordingly, we dismiss the appeal.

## I.     Background Facts & Proceedings

A petition to terminate the mother's parental rights to T.O., born in 2015, was filed by the State on May 8, 2023. The mother was appointed counsel pursuant to Iowa Code section 815.9 (2023).[1] The appointment order stated, "The mother is currently incarcerated. [Counsel] is appointed as guardian ad litem as well as her attorney."[2]

---

[1] Section 815.9 provides for court-appointed counsel for indigent parents in proceedings under chapter 232.

[2] Iowa Rule of Civil Procedure 1.211 provides:

> No judgment without a defense shall be entered against a party then a minor, or confined in a penitentiary, reformatory or any state hospital for the mentally ill, or one adjudged incompetent, or whose physician certifies to the court that the party appears to be mentally incapable of conducting a defense. Such defense shall be by guardian ad litem; but the conservator (and if there is no conservator, the guardian) of a ward or the attorney appearing for a competent party may defend unless the proceeding was brought by or on behalf of such fiduciary or unless the court supersedes such fiduciary by a guardian ad litem appointed in the ward's interest.

The termination hearing was held on July 6. At the time of the termination hearing, the mother had not seen T.O. in person in nearly one year. It was reported that the child was scared of the mother. The court made arrangements for the mother to participate in the termination hearing by telephone from the Linn County Jail. The mother, however, refused to participate, saying she was not going to talk to strangers. Counsel for the mother stated that she tried to visit the mother at the jail. But the mother denied T.O. was her child, and she was not interested in talking to counsel. Counsel was required to meet with the mother while standing in the hallway through the half-opened jail cell door, as it was determined to be unsafe to meet with the mother privately.

Counsel for the mother presented exhibits to show that on December 19, 2022, the mother was ordered to have a competency evaluation in a pending criminal matter. A doctor from the Iowa Medical and Classification Center (IMCC) determined the mother was not competent to stand trial. In the criminal matter, on March 2, 2023, the court found the mother was "suffering from a mental disorder which would prevent her from understanding the proceedings or assisting effectively in [her] defense and that the [mother] is not competent to stand trial at this time." She was ordered to "undergo competency restoration treatment at the IMCC."

Counsel for the mother requested that the termination hearing be continued due to the mother's incompetency. Counsel stated the mother was "not able to

---

The rule "is not intended to go any further for the classes it protects than to place them on an equal footing with those not under one of the impediments listed." *In re Marriage of McGonigle*, 533 N.W.2d 524, 525 (Iowa 1995).

understand the proceedings" or "adequately participate in these proceedings." The court denied the motion, finding, "the primary purpose here, unlike a criminal trial, is not your client's ability to participate and her own . . . interests. It's the best interests of the child. So we will continue today."

On July 10, the mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(g) and (h). The court also determined that termination of the mother's parental rights was in the child's best interests. The termination order noted the mother had been found incompetent in pending criminal matters.[3]

Counsel for the mother filed a notice of appeal on July 25. The notice was not signed by the mother. The notice stated the mother was unable to sign, stating she was found to be incompetent in her criminal cases. An order was entered on July 28, 2023, appointing an attorney to represent the mother in the appeal. The State moved to dismiss, asserting the court lacked jurisdiction to consider the appeal because the mother did not sign the notice of appeal. The State also pointed out that counsel for the mother did not indicate the mother affirmatively intended to appeal the court's ruling. The Iowa Supreme Court ordered that this jurisdictional issue should be considered with the appeal.

## II. Jurisdiction

Iowa Rule of Appellate Procedure 6.102(1)(a) provides:

> An appeal from a final order or judgment in a termination-of-parental-rights or a child-in-need-of-assistance case under Iowa Code chapter 232 is initiated by filing the notice of appeal with the clerk of the district court where the order or judgment was entered within the time provided in rule 6.101(1)(a). *The notice of appeal cannot be filed unless signed by both the appellant's counsel and the*

---

[3] The father's parental rights were also terminated after he consented to such. The father is not a party to this appeal.

> *appellant.* The notice of appeal must follow the requirements of Iowa R. Elec. P. 16.305(5)(c)(1) for filing documents containing two or more signatures. The appellant's signature must be an original or an unaltered digitized signature. *See* Iowa R. Elec. P. 16.201(35). An informational copy of the notice of appeal must be filed electronically with the clerk of the supreme court.

(Emphasis added).

Under this rule, "[t]he notice of appeal must be signed by the appellant's counsel and the appellant." *In re T.F.*, No. 03-0500, 2003 WL 21076398, at *1 (Iowa Ct. App. May 14, 2003). A parent's appeal is dismissed when the parent failed to sign the notice of appeal. *See In re C.M.*, No. 22-0331, 2022 WL 1234156, at *1 n.2 (Iowa Ct. App. Apr. 27, 2022) (noting the father filed a notice of appeal but did not sign it and his appeal was dismissed); *In re L.B.*, No. 18-0262, 2018 WL 1863294, at *1 n.1 (Iowa Ct. App. Apr. 18, 2018) ("Although a notice of appeal was filed in the mother's name, the mother failed to sign it" and "[h]er appeal was ultimately dismissed for failure to comply with the appellate rules of procedure."); *In re C.W.*, No. 13-0129, 2013 WL 2146237, at *1 n.1 (Iowa Ct. App. May 15, 2013) (stating the father's appeal was dismissed because his appeal was filed without his signature); *In re K.B.*, No. 03-1414, 2003 WL 23220031, at *1 n.2 (Iowa Ct. App. Nov. 26, 2003) (finding the mother's appeal was dismissed because she failed to comply with the rule requiring that the notice of appeal be signed by counsel and the parent). The case *In re D.S.* notes, "The mother's attorney appealed at the mother's behest, but the supreme court dismissed the appeal when the mother failed to sign the notice of appeal." No. 22-1455, 2022 WL 16985692, at *1 n.2 (Iowa Ct. App. Nov. 17, 2022). We have found no instances

where an appeal in a termination case proceeded based on the signature of the attorney alone.[4]

In instances where only the attorney signed the notice of appeal, the appeal has been permitted to continue where a parent filed an amended petition containing the correct signatures. *In re L.A.*, No. 16-0242, 2016 WL 3281133, at *1 n.4 (Iowa Ct. App. June 15, 2016) ("The mother's original notice of appeal did not include her signature as required by rule 6.102(1)(a). The mother subsequently filed an amended notice of appeal complying with the rule."); *In re J.D.*, No. 04-0979, 2004 WL 1900011, at *2 n.3 (Iowa Ct. App. Aug. 26, 2004) (finding that the attorney was able to subsequently locate a missing parent, who filed an amended notice of appeal); *T.F.*, 2003 WL 21076398, at *1 (noting the notice of appeal was signed only by counsel, not the parent, but the mother filed an amended notice of appeal with the requisite signatures); *In re S.B.*, No. 03-0289, 2003 WL 1970757, at *2 (Iowa Ct. App. Apr. 30, 2003) (finding the notice of appeal had been signed by counsel only but an amended notice of appeal contained the signatures of the attorney and the parent). But this is not a situation where the mother filed an amended notice that contained her signature.

---

[4] We distinguish *Segura v. State*, a case that did not involve termination of parental rights but which raised the issue of "whether a person can properly present a claim against the State without complying with a state appeals board . . . regulation that requires the claimant to personally sign the form." 889 N.W.2d 215, 217 (Iowa 2017). The court found the administrative regulations requiring the signature of the claimant "do not define the jurisdictional ambit of" the relevant statute. *Id.* at 226. Unlike the administrative rules at issue in *Segura*, the rule for appeal following termination of parental rights is subject to review by the legislative council. *See* Iowa Code §§ 602.4201(3)(d), .4202. "Iowa court rules have the force and effect of laws, and therefore 'we interpret rules in the same manner we interpret statutes.'" *State v. Mootz*, 808 N.W.2d 207, 221 (Iowa 2012) (quoting *City of Sioux City v. Freese*, 611 N.W.2d 777, 779 (Iowa 2000)).

We turn to the issue of substantial compliance. In general, "[n]otices of appeal should be liberally construed so as to preserve the right of review, and permit, if possible, a hearing on the merits." *Iowa Dep't of Human Servs. ex rel Greenhaw v. Stewart*, 579 N.W.2d 321, 323 (Iowa 1998) (citation omitted). The Iowa Supreme Court has stated:

> Thus, as long as the opposing party is not misled to his irreparable harm, a notice of appeal which can reasonably be construed as an attempt in good faith to appeal from an appealable decision is sufficient; and, as a rule the notice is sufficient if it reasonably shows that an appeal is intended and the judgment, order, or decree appealed from substantially states the other facts required by the statute to be shown.

*Id.* at 323–24 (quoting 4 C.J.S. *Appeal & Error* § 371 (1993)).

"If the intent of the appellant to appeal from a judgment may be inferred from the text of the notice and if the appellee has not been mis-led by the defect, the appeal will be entertained." *Citizens First Nat'l Bank v. Turin*, 431 N.W.2d 185, 188 (Iowa Ct. App. 1988). For there to be substantial compliance, there must be evidence of an intent to appeal. *State v. Boyer*, No. 18-1892, 2020 WL 2108129, at *2 (Iowa Ct. App. Mar. 12, 2020); *see also Mapp v. State*, No. 14-1537, 2016 WL 146246, at *1 (Iowa Ct. App. Jan. 13, 2016) (noting one element of substantial compliance is an indication the appellant intended to appeal).

In *T.F.*, the mother timely appealed the termination of her parental rights but the notice of appeal was signed only by counsel. 2003 WL 21076398, at *1. The mother filed an amended notice of appeal containing the correct signatures outside the fifteen-day period to appeal. *Id.* We found the mother's amended notice of appeal substantially complied with the appellate rules and concluded her appeal should not be dismissed on the ground it was untimely. *Id.* From the ruling that

the mother's later, amended notice of appeal substantially complied with the appellate rules, we can infer that the mother's initial notice of appeal, that was signed only by counsel, did not substantially comply with these rules. *See id.* As noted, an amended notice was not filed in the instant appeal.

The State also contends no evidence shows the mother intended to appeal the termination of her parental rights. The notice of appeal contains a statement by the mother's counsel:

> I have visited the Mother several times in the Linn County Jail. Most recently, I visited her prior to the termination trial and again after the termination order was issued. Both times, the mother indicated she did not really remember me. Both times she indicated that [T.O.] was not her son. She would not sign the Notice of Appeal. I do not believe she has the capacity to understand these proceedings and is unable to make an informed decision whether to appeal or not. Wherefore I am requesting that as her attorney and Guardian Ad Litem, I be authorized to proceed with this appeal even though the Mother has not signed this Notice of Appeal.

Counsel's statement contains no indication the mother intended or wanted to appeal.

The notice of appeal did not meet the requirements found in rule 6.102(1)(a) to appeal the termination of parental rights. Additionally, the mother did not substantially comply with the requirements of the rule. We determine that we lack jurisdiction to consider the notice of appeal signed only by mother's counsel.

**APPEAL DISMISSED.**

Badding, J., concurs; Greer, P.J., concurs specially.

**GREER, Judge** (specially concurring).

Because we have no path to do otherwise, I concur in the well-written decision of the majority. But I write separately to point out our need for guidance on this important issue—the right to appeal. Because of the mother's long history of mental-health concerns and our focus on the best interests of the child, it seems unlikely there would be a different result, yet my concern is about the process.[5] Mostly, I am struck by the absurdity that, as happened here, a mother who has been found not competent to stand trial by a medical professional must, before she was able to undergo competency restoration treatment, be deprived of a right to appeal the termination of parental rights because she didn't sign a paper.

As noted by the majority, the mother was determined to be incompetent in the criminal proceedings under Iowa Code section 812.3(1) (2023), which applies when "the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense." And although termination proceedings are civil in nature, we have pulled from principles grounded in criminal proceedings at other times to address issues, such as questions over the ineffective assistance of counsel in termination proceedings. *See In re J.P.B.*, 419 N.W.2d 387, 389–91 (Iowa 1988) (applying the standards for ineffective assistance utilized in the criminal area to the question of termination counsel's representation, yet

---

[5] The mother's counsel moved for a continuance of the termination hearing, noting the mother was sitting in jail with no services and waiting to be transferred for competency restoration treatment; as the majority noted, the continuance was denied. Renewing the request for more time at the end of the hearing, mother's counsel noted "maybe she's not lower functioning but suffering from mental health issues."

cautioning the inadvisability of a mechanical application of those same standards in the civil case); *see also In re A.B.*, 957 N.W.2d 280, 290 (Iowa 2021) (looking to criminal case law and allowing delayed appeals in termination cases based on the recognition of valid due process issues). "Thus, the termination of parental rights, including the appeal process, clearly implicates protected liberty interests for parents to which due process protections attach." *A.B.*, 957 N.W.2d at 291. And "we cannot short shrift the importance of the appeal process to a parent whose parental rights have been terminated." *Id.*

But here we have nowhere to go for the answer. With our rule in hand, we must deny this mother a right to appeal because she cannot sign the notice and, because of her lack of competency, no one could verify she even wanted to appeal. And implications exist beyond this factual pattern. For example, what if during the termination-of-parental-rights process, a mother is in a motor vehicle accident and, because she is in a coma, is unable to sign the notice of appeal or verify that she even wants to proceed through the appellate process? Somehow we must make sense of this and weigh the process involved against the right impacted. "[P]arents have a fundamental liberty interest in raising their children without state intervention." *In re N.C.*, 952 N.W.2d 151, 156 (Iowa 2020). In fact, "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court]." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). As the mother notes in her appellate brief, no person should be deprived of life, liberty, or property without due process of the law. *See In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994) (noting that state intervention to terminate the most precious

right of a parent over the care of a child requires the procedures meet "the requisites of the Due Process Clause" (citation omitted)).  Maybe that process requires a further protection outside of our rule when a medical professional finds a parent is incapable of participation in that process?