**IN THE COURT OF APPEALS OF IOWA**

No. 16-1573
Filed May 3, 2017

**IN THE INTEREST OF D.S.,**
**Minor Child,**

**J.S., Mother,**
     Petitioner-Appellant,

**C.T., Father,**
     Respondent-Appellee.
_____

       Appeal from the Iowa District Court for Dubuque County, Thomas J.

Straka, Associate Juvenile Judge.


       A mother appeals the juvenile court order denying her petition to terminate

the parental rights of the father.  **REVERSED AND REMANDED.**


       Jenny L. Weiss of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque,

for appellant.

       Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellee.

       Kim C. Roddick of Reynolds & Kenline, L.L.P., Dubuque, guardian ad

litem.


       Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

A mother, J.S., appeals the juvenile court order denying her petition to terminate the parental rights of the father, C.T. The parties do not dispute C.T. abandoned the child within the meaning of Iowa Code section 600A.8(3)(b) (2016). We find the juvenile court improperly concluded termination of C.T.'s parental rights was not in the child's best interests. We conclude the decision of the juvenile court should be reversed and C.T.'s parental rights to D.S. should be terminated.

## I.     Background Facts & Proceedings

J.S. and C.T. are the parents of D.S., born in 2004. J.S. testified when she told C.T. she was pregnant he denied being the father and assaulted her, although she did not press charges. After the child was born, C.T. would call J.S. multiple times a day, sometimes just hanging up and sometimes leaving threatening messages or calling J.S. names. One message stated, "You're dead. I just got out of jail, bitch, and you're next." C.T. was convicted of four counts of harassment. A no-contact order was entered, which was in place for five years. C.T. was in jail, on and off, until January 2008. During this time C.T. was also using illegal drugs.

C.T. has had very little contact with the child throughout his life. J.S. stated C.T. had not seen the child since he was an infant, while C.T. stated he last saw the child in 2008. Additionally, C.T. has paid very little, if anything, to support the child. J.S. testified she had never received any financial support from C.T. C.T. testified he had given the child a few gifts.

On March 22, 2016, C.T. filed a petition seeking physical care of the child, with J.S. having visitation. This was very frightening for the child, who was then twelve years old. He was worried he would be taken away from his mother and sent to live with a father he did not know. The child has stated he does not want to meet C.T.

On April 1, 2016, J.S. filed a petition seeking to terminate C.T.'s parental rights, pursuant to Iowa Code section 600A.8(3)(b) (abandonment) and (4) (failure to provide financial support). The court appointed a guardian ad litem (GAL), Kim Roddick. After meeting with all of the parties, the GAL wrote a report recommending termination of C.T.'s parental rights. The GAL stated:

> I think it is too late. It think it is in the minor's best interest to terminate [C.T.]'s parental rights. The thought of this case has made it difficult for [D.S.] He has been able to maintain his performance in school, but he has found it difficult to concentrate on his physical therapy. If something should happen to [J.S.] it would not be in [D.S.]'s best interest to live with [C.T.] and be separated from his sister. This is one of [J.S.]'s concerns. That is the difference between [J.S.]'s role as a parent and [C.T.]'s role. He has never thought far enough ahead to plan for the minor and do what is in his best interest. He has never put the minor's needs ahead of his own.

At the termination hearing, J.S. testified she was thirty years old. She lived with her parents, D.S., and a younger child.[1] J.S. has a high school diploma. She was currently working part-time at a Culver's Restaurant, where she earned nine dollars per hour. She was attempting to get a full-time job, where she would be eligible for health insurance. J.S. stated D.S. is doing very well in school. She testified the child had a close relationship with his younger

---

[1] After her relationship with C.T., J.S. was married for a period of time and her younger child is the result of that marriage. J.S. is no longer married to the father of the younger child.

sister and with members of her extended family. J.S. stated she was currently in a relationship with D.K., who also worked at Culver's.

Due to a condition with his feet, D.S. goes to physical therapy. After C.T. sought physical care of the child, D.S. was not following through with recommended exercises from his physical therapist. J.S. also testified "[D.S.]'s broken down. He doesn't want to go outside and play. He stays in the house." She stated D.S. told her he was worried C.T. would run off with him and he would never see his family again. J.S. stated when she was not with D.S. he would call and ask her where she was and when she would be home.

L.S., the maternal grandmother testified concerning D.S.,

> Well, he's—he's very frightened. He—he's not real sure what to do. He doesn't really want to go anywhere without somebody being there. He's kind of–he's—he hasn't wanted to do his physical therapy exercises. He's just kind of given up on a lot of stuff.

C.T. testified he was thirty-one years old. C.T. worked for Quincy Bag, where he earned eleven dollars per hour. He lived with his fiancé, L.P., and her two daughters. He stated he previously used illegal drugs but had not used any for the past five or six years. C.T. stated he was unable to contact J.S. to set up visitation with D.S. due to the no-contact order. He stated he sent money to J.S. in 2006, 2007, or 2008, "I don't know exactly when back then." C.T. stated he had not seen or spoken to D.S. since 2008.

L.P., C.T.'s fiancé, testified she was willing to support C.T.'s efforts to have a relationship with D.S. L.P. stated she did not believe C.T. had sent gifts or money to D.S. within the past six years. She testified C.T. helped financially support her and her two children. C.T.'s employer testified C.T. had a secure

job. C.T.'s father testified C.T. had been trying to save enough money to pay an attorney for the custody proceedings. C.T.'s brother stated he believed C.T. would be a good father.

The juvenile court determined J.S. had presented sufficient evidence to terminate C.T.'s parental rights on the ground of abandonment, under section 600A.8(3)(b). The court found, however, termination of C.T.'s parental rights was not in the child's best interests, stating, "establishing and maintaining a source of financial support for [D.S.] through his father is in [D.S.]'s long-term best interest and outweighs any potential for short-term negative effects which may result from [D.S.] having to meet [C.T.]" The court noted if C.T.'s rights were terminated, "there is no one waiting to adopt [D.S.] and financially support him." The court also found it was "unable to determine from this evidence that introducing [D.S.] to [C.T.] would have any negative long-term emotional ramifications." J.S. appeals the juvenile court's decision.

## II.    Standard of Review

Our review in matters pertaining to termination of parental rights under Iowa Code chapter 600A is de novo. *In re D.E.E.,* 472 N.W.2d 628, 629 (Iowa Ct. App. 1991). In cases in equity, we give weight to the factual findings of the district court, especially considering the credibility of witnesses, but are not bound by them. Iowa R. App P. 6.904(3)(g). In termination proceedings, our paramount consideration is the best interests of the child. Iowa Code § 600A.1.

## III.    Best Interests

J.S. claims the juvenile court improperly found termination of C.T.'s parental rights was not in D.S.'s best interests. She states the court gave too

much weight to the possibility the child might receive some financial support from C.T. in the future. J.S. points out C.T. has not financially supported the child in the past. J.S. also claims the juvenile court did not give enough weight to the emotional, mental, and physical strain C.T.'s sudden presence in D.S.'s life has caused. She noted D.S. has stated he does not want to meet C.T. J.S. states C.T. waited twelve years while pursuing his own interests, then he decided it was "time for him to be a dad" without considering how his actions would impact D.S.

"To terminate parental rights under chapter 600A, the petitioning party must show termination is in the child's best interests." *In re G.A.*, 826 N.W.2d 125, 131 (Iowa Ct. App. 2012). Iowa Code section 600A.1 provides:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Our paramount consideration in termination proceedings under chapter 600A is the best interests of the child. *Id.*

A child's best interests are to be determined within the statutory framework; they are not to be based upon the court's own perceptions. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010) (citing *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). The Iowa Supreme Court has noted chapter 232 and chapter 600A differ in statutory language referencing the consideration of financial support in determining a child's best interests. *In re H.S.*, 805 N.W.2d 737, 747-48 (Iowa 2011). "[O]ur appellate courts have repeatedly recognized

child support generally as a valid consideration in termination proceedings under chapter 600A." *Id.* at 746. On the other hand, "the anticipated loss of child support funds in and of themselves as a result of termination should not be part of the section 232.116(2) best interests analysis." *Id.* at 749.

The child's right to receive financial support from a parent is a factor to consider in determining the child's best interests. *See In re T.Q.*, 519 N.W.2d 105, 107 (Iowa Ct. App. 1994). There is a line of cases in which it was determined it was not in a child's best interests to terminate a parent's rights when a parent voluntarily sought termination as a basis to avoid paying child support. *See In re D.W.K.*, 365 N.W.2d 32, 35 (Iowa 1985); *T.Q.*, 519 N.W.2d at 107; *In re J.L.W.*, 496 N.W.2d 280, 283 (Iowa Ct. App. 1992); *In re K.J.K.*, 396 N.W.2d 370, 372 (Iowa Ct. App. 1986). In particular, it is not in a child's best interests to terminate a parent's rights if doing so makes the child a charge upon the State. *K.J.K.*, 396 N.W.2d at 372. We also consider whether there is anyone in a position to assume financial responsibility for the child, such as whether there are plans for adoption. *J.L.W.*, 496 N.W.2d at 282.

This case does not involve a situation where C.T. voluntarily sought to terminate his parental rights in an attempt to escape his duty to pay child support. *See D.W.K.*, 365 N.W.2d at 35. Also, J.S. testified she had always been able to financially provide for D.S. The mother is industrious and hardworking; she has always supported the child with her wages. She stated she had not received financial support from C.T. in the past. The evidence does not show the child

would become a charge upon the State if C.T.'s parental rights were terminated.[2] *See K.J.K.*, 396 N.W.2d at 372. While there were no plans for anyone to adopt D.S., J.S. made a will nominating her parents as guardians of the child if anything happened to her. D.S. has a very strong relationship with his extended family and in particular with his maternal grandparents, whom he lives with. Under the will, J.S.'s parents would be financially responsible for the child if anything happened to J.S. and have acknowledged they would be willing to care for D.S. and his half-sibling if something were to happen to J.S. J.S. has a good relationship with her parents. They provide a support system for J.S. and the child.

Another important factor to consider in "determining the best interests of a child is the child's emotional and psychological health." *In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010). D.S. told his mother and the GAL he was not interested in meeting C.T. The child was twelve years old. He did not have a relationship with C.T. and was aware C.T. had not taken steps to be involved in his life until recently. According to the GAL, "He is angry that [C.T.] has not been in his life and he doesn't see any need to have [C.T.] in his life at this time." There was evidence from the mother, the grandmother, and the GAL to show D.S. was frightened and anxious about being forced into having contact with C.T. There was also evidence the child was not participating in physical therapy due to his current emotional condition.

---

[2] The child receives health insurance through Title XIX, but neither the mother nor the child receive any other type of public support.

In considering the child's best interests, we believe the juvenile court did not give sufficient weight to the wishes of D.S., who was twelve years old. While chapter 600A does not have a provision concerning a child's preference for termination of a parent's rights, "[t]he reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference," is a factor in determining a child's best interests under chapter 232. *See* Iowa Code § 232.116(2)(b)(2). Additionally, a court may decide not to terminate a parent's rights under chapter 232, if "[t]he child is over ten years of age and objects to the termination." *Id.* § 232.116(3)(b); *see also In re A.T.*, 744 N.W.2d 657, 666 (Iowa Ct. App. 2007) (finding an attorney should be appointed for a twelve-year-old child, who "demonstrated a maturity beyond her years," and who objected to termination of her mother's rights). D.S. was described by one of his teachers as "a kind, caring student who shows responsibility throughout the day." D.S. stated he was not interested in having a relationship with C.T.

Upon our de novo review, and after considering the language found in section 600A.1, we find termination of C.T.'s parental rights is in the child's best interests. C.T. has not financially supported the child, demonstrated a continued interest in the child, maintained communication with the child, or established a place of importance in the child's life. *See* Iowa Code § 600A.1. We determine C.T. has not "affirmatively assume[d] the duties encompassed by the role of being a parent." *See id.* For twelve years, C.T. was content to let J.S. assume all of the responsibility for the child. The best predictor of a parent's future behavior is to examine the parent's behavior in the past. *See In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000). Even now, C.T. is focused on his recent interest

in parenting the child, rather than the child's needs. C.T. does not dispute he abandoned the child within the meaning of section 600A.8(3)(b).

We conclude the decision of the juvenile court should be reversed and C.T.'s parental rights to D.S. should be terminated.

**REVERSED AND REMANDED.**