**In the Interest of A.T. and T.P., Minor Children,**

**S.R.P., Mother, Appellant,**

**L.A.P., Father, Appellant.**

No. 07–0998.

Court of Appeals of Iowa.

Dec. 28, 2007.

Thomas Graves of Jackowski & Graves, L.L.P., Clive, for appellant-mother.

Andrea M. Flanagan of Sporer & Ilic, P.C., Des Moines, for appellant-father.

Thomas J. Miller, Attorney General, Kathrine S. Miller–Todd and Janet L. Hoffman, Assistant Attorney Generals, John P. Sarcone, County Attorney, and Chris Gonzales, Assistant County Attorney, for appellee.

Michael Bandstra, Des Moines, guardian ad litem for minor children.

Heard by SACKETT, C.J., and VAITHESWARAN and BAKER, JJ.

SACKETT, C.J.

In this appeal from the juvenile court's order terminating the parental rights of two children the issues are whether (1) the role of guardian ad litem and attorney for both children should have been assumed by the same person where the older child, contrary to the guardian ad litem's recommendation, did not want her parental rights terminated; (2) termination of the mother's parental rights were in the best interest of the children; and (3) there was clear and convincing evidence supporting the termination of the parental right of the father of the older child. We find the juvenile court abused its discretion in not appointing a separate attorney for the older child and remand.

**BACKGROUND.** On May 30, 2007, the juvenile court ordered termination of the parental rights of the parents of Taylar, born in October of 1994, and Angelina, born in July of 2003. Petitions on appeal were filed by Sherrie, the children's mother, and Lynn, the father of Taylar, seeking relief from the termination order. Leonel, the father of Angelina, did not file a petition on appeal.[1] We remanded for full briefing on two issues. We now have received full briefs from Sherrie and Lynn, the State, and the guardian ad litem and

---

1. The juvenile court found Leonel was in Mexico but made no finding that he was served with notice of the proceeding or that he was within the jurisdiction of the Iowa juvenile court.

attorney for the children and heard oral arguments on the issues.

The two children, who have different fathers, have twice been removed from their mother's care primarily because she has a serious substance abuse problem, and during the times she is drinking alcohol or ingesting drugs she is an inadequate parent. The latest removal was in September of 2005. The matter initially came before the juvenile court in August of 2005, and the juvenile court allowed Sherrie an additional six months to prepare herself for her daughters' return. Sherrie continued to have issues with substance abuse. The State filed a petition to terminate parental rights in June of 2006.

A hearing on the petition to terminate was again held in April of 2007. The juvenile court ordered termination of all parents' parental rights. The court terminated Sherrie's rights to the two girls under Iowa Code sections 232.116(1)(f) and (*l*) (2007), and also terminated Sherrie's parental rights to Angelina under section 232.116(1)(h). The court terminated Lynn's parental right to Taylar under section 232.116(1)(b), and Leonel's parental rights to Angelina under section 232.116(1)(b).

**SHERRIE'S CLAIMS.** Sherrie does not contest the juvenile court's findings that the State proved grounds to terminate her parental rights to the two children nor does she argue that her children can be returned to her at this time. Sherrie's appeal focuses, rather, on (1) her concern that Taylar's wishes not to have Sherrie's parental rights terminated were not properly represented or given adequate weight, (2) that termination is not in the children's best interest, and (3) that Mike Bandstra, who represented both girls both as their guardian ad litem and their attorney, should not serve Taylar in both capacities. Sherrie argues Bandstra sought termi-

nation though Taylar did not want her mother's parental rights terminated. Sherrie also contends the juvenile court should have given more weight to her decision to take up residence in the House of Mercy, a program for substance dependent parents.

Lynn, Taylar's father, contends (1) there was insufficient evidence to prove the necessary elements of section 232.116(1)(b) as the State failed to show he abandoned or deserted Taylar, and (2) termination of his parental rights was not in Taylar's best interest.

The State and Bandstra contend Sherrie failed to preserve error on the issue of the refusal to appoint a separate attorney and guardian ad litem for Taylar. They also contend that (1) a separate attorney was not necessary for Taylar, (2) Taylar was mature enough to participate in the decision not to have a separate attorney and guardian ad litem, and (3) Taylar was not entitled to dual representation for she was legally capable of providing information to the court.

**A. Preservation of error.** The State and Bandstra contend error was not preserved on the issue of the dual representation. We disagree. Sherrie filed a motion asking that Taylar have separate counsel at an August 2006 hearing. She apparently withdrew the request during that hearing but again made the request at the April 2007 termination hearing. There was a disagreement at that time as to whether the issue could again be brought before the court; however, the court addressed the motion, overruling it and finding that Taylar had waived the conflict. The court held that a conflict did not prevent an attorney from serving in both roles if, as Taylar's attorney, he presented Taylar's wishes to the court and, as guardian ad litem, presented what he determined to

be her best interest to the court. The issue was properly preserved for review. Even if it was not preserved, the lack of an objection to an alleged conflict of interest does not preclude consideration of the issue on appeal. *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988); *see also State v. Neal*, 353 N.W.2d 83, 86 (Iowa 1984); *State v. Don*, 318 N.W.2d 801, 807 (Iowa 1982). We will address the claim.

**B. Conflict.** At the time of trial, Taylar was a twelve-year-old girl who the court noted "was impressive and demonstrated a maturity beyond her years." She recognized her parent's shortcomings. While in foster placement she was abused. She was allowed to express her opinion to the court, but with the assistance of a guardian ad litem who did not share her goal. Sherrie claims that, because Taylar's wishes did not correspond with the wishes of the guardian ad litem, Taylar should have had a separate attorney to advocate her wishes. Bandstra acknowledges that he has served as both attorney and guardian ad litem for Taylar. He notes that Taylar has always verbalized that she wants to return to her mother. He contends he has followed the mandates of *In re G.Y.*, 486 N.W.2d 288 (Iowa 1992), by disclosing there was a conflict between his role as an attorney advocating for Taylar's wishes and as a guardian ad litem advocating what he determined to be Taylar's best interest. He states that he met with Taylar and explained the conflict and Taylar indicated she did not want a separate attorney.

■ We must start with the proposition that Taylar has a very real stake in the outcome here. "[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship." *Santosky v. Kramer*, 455 U.S. 745, 760, 102 S.Ct. 1388, 1398, 71 L.Ed.2d

599, 611 (1982). As in this case where Taylar was abused in the foster home, it was noted that "even when a child's natural home is imperfect, permanent removal from that home will not necessarily improve his welfare." *Id.* at 766, 102 S.Ct. at 1401, 71 L.Ed.2d at 614 n. 15.

In this case, Taylar sought to have her wishes represented and stay with her mother. The Iowa legislature has statutorily provided for the appointment of both an attorney and guardian ad litem for a child in Taylar's position in Iowa Code section 232.89, which provides in applicable part:

> 2. Upon the filing of a petition, the court *shall* appoint counsel and a guardian ad litem for the child identified in the petition as a party to the proceedings.
>
> . . .
>
> 4. The same person *may* serve both as the child's counsel and as guardian ad litem. However, the court may appoint a separate guardian ad litem, if the same person cannot properly represent the legal interests of the child as legal counsel and also represent the best interest of the child as guardian ad litem. . . .

(Emphasis supplied).

The legislature has also defined the guardian ad litem's role in section 232.2(22), which provides in relevant part:

> a. "Guardian ad litem" means a person appointed by the court to represent the interests of a child in any judicial proceeding to which the child is a party, and includes a court appointed special advocate. . . .
>
> b. Unless otherwise enlarged or circumscribed by a court or juvenile court having jurisdiction over the child or by operation of law, the duties of a guardian ad litem with respect to a child shall include the following:

(1) Conducting in-person interviews with the child, if the child's age is appropriate for the interview, and interviewing each parent, guardian, or other person having custody of the child, if authorized by counsel.

(2) Conducting interviews with the child, if the child's age is appropriate for the interview, prior to any court-ordered hearing.

(3) Visiting the home, residence, or both home and residence of the child and any prospective home or residence of the child, including each time placement is changed.

(4) Interviewing any person providing medical, mental health, social, educational, or other services to the child, before any hearing referred to in subparagraph (2).

(5) Obtaining firsthand knowledge, if possible, of the facts, circumstances, and parties involved in the matter in which the person is appointed guardian ad litem.

(6) Attending any hearings in the matter in which the person is appointed as the guardian ad litem.

(7) If the child is required to have a transition plan developed in accordance with the child's case permanency plan and subject to review and approval of a transition committee under section 235.7, assisting the transition committee in development of the transition plan.

c. The order appointing the guardian ad litem shall grant authorization to the guardian ad litem to interview any relevant person and inspect and copy any records relevant to the proceedings, if not prohibited by federal law. The order shall specify that the guardian ad litem may interview any person providing medical, mental health, social, educational, or other services to the child, may attend any departmental staff meeting, case conference, or meeting with medical or mental health providers, service providers, organizations, or educational institutions regarding the child, if deemed necessary by the guardian ad litem, and may inspect and copy any records relevant to the proceedings.

d. If authorized by the court, a guardian ad litem may continue a relationship with and provide advice to a child for a period of time beyond the child's eighteenth birthday.

An attorney's responsibility with reference to Taylar is that due a client with diminished capacity because Taylar is not of legal age. This principle is found in Iowa Rule of Professional Conduct 32:1.14, which provides in relevant part:

(a) When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority ... the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

(b) When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial, or other harm unless action is taken, and cannot adequately act in the client's own interest the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client *and, in appropriate cases, seeking the appointment of a guardian ad litem,* conservator, or guardian.

(Emphasis supplied).

It has been suggested that role definition and confidentiality issues can arise whenever attorneys are appointed to serve as guardians ad litem; however, they become even more complex when an attorney is appointed to serve as both attorney and

guardian ad litem for a child. Ann M. Haralambie, *The Role of the Child's Lawyer In Protecting the Child Throughout the Litigation Process,* 71 N.D. L. Rev. 939, 941 (1995). Under ABA standards, one lawyer cannot take on a hybrid role and advocate both for the child's wishes and his or her best interest. American Bar Association Section of Family Law, *Standards of Practice for Lawyers Representing Children in Custody Cases,* 37 Fam. L.Q. 131, 134 (2003); *see also* Nicole A. Demers, Note, *An Attorney is an Attorney is an Attorney Except when the Attorney is also a Guardian Ad Litem: An Analysis of the Connecticut Appellate Court's Decision in Carrubba v. Moskowitz Regarding Immunity,* 24 Quinnipiac L.Rev. 847, 866 (2006).

The initial question is whether the juvenile court abused its discretion in finding that Bandstra can properly represent the legal interest of Taylar and also represent her best interest. Is Bandstra's fundamental and statutory duty as guardian ad litem consistent with his fundamental responsibility as a lawyer to abide by the decisions and objectives of his client? Bandstra's position is that it is.

Bandstra's argument finds some support from *In re J.P.B.,* 419 N.W.2d 387, 391–392 (Iowa 1988), a parental termination case where the court addressed ineffective assistance of counsel claims against two attorneys, one who represented at trial both children, and the second who represented the children's mother at trial.[2] The

first challenge was to the effectiveness of the trial attorney for the children, a boy age nine and a girl age thirteen. *Id.* at 388. The boy wanted his parental rights terminated while the girl did not want her parental rights terminated. *Id.* The girl contended she was denied her constitutional right to effective assistance of counsel because her court-appointed attorney also represented her brother who favored termination. *Id.* The second challenge was to the effectiveness of the attorney for the children's mother. *Id.* She contended her attorney was ineffective in failing to object to the conflict of interest inherent in the dual representation of her children. *Id.*

The Iowa court, in seeking some guidance from *In re Marriage of Rolfe,* 216 Mont. 39, 699 P.2d 79, 86–87 (1985),[3] did not find either attorney ineffective. *J.P.B.,* 419 N.W.2d at 391–92. The court pointed out that the reasons for contested custody proceedings are that the children involved are not yet mature enough to be self-determining and it is the best interests of the minor children, not their wishes, which determine the outcome of the case. *Id.* Consequently, their real interests are not inconsistent or mutually exclusive. *See id.*

The court went on to recognize, citing Iowa Code of Professional Responsibility for Lawyers Rule DR7–101,[4] that in the ordinary lawyer-client relationship, the lawyer's role is not to determine the client's interest but to advocate the client's interest. *Id.* The court noted that such a

---

**2.** There is nothing in the opinion to indicate a guardian ad litem was appointed for either child, though section 232.96 of the 1987 Code of Iowa contains substantially the same language as those portions of sections 232.89(2) and 232.89(2)(a) of the Code provisions applicable here.

**3.** A child whose parents are seeking a dissolution of their marriage will not be orphaned by the court's decision as a child in a termi-

nation of parental rights case may be. In most dissolution cases, the court is merely allocating between two adequate parents the child's growing up time. The child will continue to have the benefit of both parents and relationships with both parents and their extended families.

**4.** Now 32:1.3

duty may present an ethical dilemma in a juvenile proceeding where the objective is always the best interest of the child, not the child's personal objective, and acknowledged that the unsettled law in this area offers no clear direction to an attorney faced with such a predicament. *Id.* at 391. The court then recognized that determining a child's best interests is difficult and a child's wishes deserve serious consideration. *Id.* at 392. The court noted that if the court-appointed attorney concludes that the child's expressed wishes are not in his or her best interest, the attorney must disclose this to the court, as the juvenile court must be clearly informed of the child's wishes and the basis for the attorney's determination that the child's wish is not in the child's best interest. *Id.* The court said that this gives priority to the paramount goal of discerning the child's best interest while enabling the lawyer to advocate an opposing viewpoint without fear of an ethical violation. *Id.* The court reasoned that such an approach obviates the expensive and burdensome practice of appointing both a guardian ad litem and attorney for each child in a family to ensure that each child's expressed wishes as well as best interest are advocated. *Id.* The court then resolved the issue on the prejudice prong, finding it was not persuaded the daughter's court-appointed counsel's simultaneous representation of her brother prejudiced the achievement of the girl's desired result or the primary goal of discerning her best interest. *Id.* The court found, for the same reason, that the failure of the mother's counsel to object to the dual representation could not support her claim of ineffective assistance. *Id.* at 391–92.

*In re J.P.B.* was followed by *In re G.Y.*, 486 N.W.2d 288 (Iowa 1992). There, the court addressed a mother's request for both an attorney and guardian ad litem for her child in a juvenile proceeding. *In re G.Y.*, 486 N.W.2d at 289. The court, recognizing in its discussion of the need for independent counsel in juvenile proceedings in *In re J.P.B.*, noted that Iowa Code section 232.89(4) seemed a practical legislative recognition of fiscal necessity[5] because justice does not require duplicitous arguments and it would be a waste of the public treasure to fund them. *See In re G.Y.*, 486 N.W.2d at 289. The court then, apparently recognizing that there may be conflicts between the role of a guardian ad litem and an attorney for a child, went on to say "When conflicts threaten, so that separate counsel becomes appropriate, the court can appoint them." *Id.*

Is there a threatening conflict here so that appointment of an attorney to represent Taylar's interests was appropriate? Is Bandstra's duty of loyalty as a lawyer for Taylar contrary to his statutory duty as guardian ad litem to the court?

It would appear that the older, more intelligent, and mature the child is, the more impact the child's wishes should have, and a child of sufficient maturity should be entitled to have the attorney advocate for the result the child desires. *See* Gary Soloman, *Role of Counsel in Abuse and Neglect Proceedings*, 192 Prac. Law Inst.Crim. Law and Urb. Prob. 543, 550 (2003). We turn then to look at the manifestation of Taylar's wishes and her maturity.

Taylar was always vocal in her wishes not to have her mother's parental rights terminated. She attended the termination

---

**5.** Even in states where the law provides a separate lawyer for the child, this often does not happen either because of the prohibitive cost of appointing a lawyer and a guardian ad litem for one child, or the guardian ad litem simply does not ask the court to appoint a lawyer for the child. Jennifer L. Renne, *Legal Ethics in Child Welfare Cases*, at 80 (2004).

hearing contrary to Bandstra's recommendation. Bandstra called her as a witness. She related that she and her sister visited her mother at the House of Mercy and she felt she understood her mother's current situation. Taylar testified her mother had changed and her mother now paid more attention to her and to her little sister. Taylar related she loves her mother, her mother loves her, and she believes her mother loves her little sister. Taylar was aware of her mother's relapses and the fact that her mother should not be using drugs. Taylar did not want to move until school was out, but then hoped to be unified with her mother at the House of Mercy.

Taylar was asked on cross examination by the county attorney:

Q. Do you think at this time that your mother is able to care for you and your sister? A. Yes.

Q. Why do you think that? A. It is because she has proved a lot, and I can see it. And she can't really go on without us, and I can't go on without a mom that has given birth to me. And I really think that she deserves the chance to have us back.

The juvenile court found:

Taylar earnestly desired a reunification with her mother. She does not want her parental rights terminated. She believes that her mother can come to successfully address her issues and resume responsibility for parenting her and her sister. She loves her mother and wants to see her succeed. Furthermore Taylar believes that her mother can succeed. I don't doubt Sherri loves her

children and would like to see reunification.

Sherrie concedes that Bandstra is experienced and able counsel, but she contends that throughout the proceedings, except for the times he put Taylar on the stand, he worked relentlessly to seek the termination of Sherrie's parental rights. Sherrie argues that he examined witnesses in a manner to put before the court complaints about her as a parent, never asked questions seeking answers that would bolster Taylar's position, and that his questioning of every witness except his own client, Taylar, worked assiduously toward termination.[6]

*In re J.P.B.* is not necessarily instructive on the issues we are asked to address and it can only be considered in concert with *In re G.Y.* The attorney for the children there, unlike the attorney here, was not also appointed as guardian ad litem. There was no guardian ad litem in *In re J.P.B.* The question was one of ineffective assistance of counsel which the court decided on a finding there was no prejudice as a result of the dual representation.[7] *In re J.P.B.*, 419 N.W.2d at 392. *In re J.P.B.* is also factually distinguishable from the case before us. The evidence supporting termination of parental rights in that case was stronger than it is here. In *In re J.P.B.*, the mother had a number of issues, the most serious of which were substantiated allegations of incest and of sexual abuse. *Id.* at 389. The court found the mother was unwilling or not able to separate both herself and her children from a family plagued by a history of incestuous behavior. *Id.* Even after the

---

6. While this was admirable, we do not consider Taylar's consent to dual representation to be dispositive. If Taylar is not competent to decide that she wants to continue to live with her mother, she certainly is not competent to decide that she is adequately represented.

7. Does *In re J.P.B.*'s holding that any attorney who is the sole representative of the child has to advocate for the best interest apply to an attorney assuming both roles?

children were placed in foster care, there was continuing abuse by family members and boyfriends during the mother's visitation period. *Id.* Consequently, the daughter's position that her parental rights should not be terminated in lieu of this behavior indicated the child was not competent to have input in this decision, nor could an attorney in good faith argue that she could.

In contrast to the mother in *In re J.P.B.*, Sherrie has been recognized as being a good mother to her children other than when she has used alcohol or illegal substances. She is bonded with her children. There is no evidence her children have suffered physical harm or sexual abuse while in her care. She has made efforts, which to this point have been unsuccessful, to curb her addiction. Yet she, at the time of the termination hearing, had voluntarily placed herself in a program to assist in her recovery, she had been religiously attending AA meetings, and she had a strong sponsor who testified on her behalf. We do not seek to minimize Sherrie's addictions, but also we cannot assume that her current program will fail. While we recognize the directives to make these decisions quickly so that children can hopefully go on to a better life, there was no evidence an adoptive home is available for Taylar.[8] Furthermore, Taylar's strong bond to her biological family may make it difficult for her to accept an adoptive family if one is found.

Taylar was aware of her mother's addiction yet had visited her during her time in foster care and observed her mother improving in the House of Mercy. The court and counsel at the termination hearing recognized Taylar's maturity. Taylar has a relationship with both her mother's and father's extended family. She is doing well in school. She has assumed substantial responsibility for her young sister.

■ The juvenile court abused its discretion in denying the motion to appoint separate counsel for Taylar. We disagree with the juvenile court that Taylar was competent to waive the clear conflicts that existed, yet we find she was mature enough to have her interest represented. The potential conflicts between a guardian ad litem's statutory duty to the court and a lawyer's duty to his client are blurred. *See generally,* Ann M. Haralambie, *The Role of the Child's Attorney In Protecting the Child Throughout the Litigation Process,* 71 N.D. L.Rev. 939, 941 (1995). The fundamental duty of the guardian ad litem conflicts with the traditional role of the lawyer.

■ We do not hold that an attorney must always be appointed for a child in a termination. A guardian ad litem can, in some situations, serve a dual role as both the guardian ad litem and the juvenile's attorney. Iowa Code section 232.89(2). When, however, a guardian ad litem recommends a disposition that conflicts with the juvenile's wishes, the juvenile court may, under Iowa Code section 232.89, appoint independent counsel to represent the child in situations where a child is of sufficient age and maturity to make an informed decision about a potential termination of a child's relationship with his or her parents. *See In re Williams,* 101 Ohio St.3d 398, 805 N.E.2d 1110, 1113–14 (2004).

---

8. While the issue of adoption is not relevant to whether the conduct of a parent is such that termination of parental rights is legally permissible, the evidence is crucial to a decision on final disposition after termination, and appellate courts are interested in knowing of the adoptability factor in their de novo review. *In re T.C.,* 492 N.W.2d 425, 429 (Iowa 1992).

Iowa Code section 232.116.2(b)(2) provides:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child. This consideration may include any of the following:
>
> . . .
>
> (2) The reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference.

Only by the appointment of an attorney can the child's wishes be effectively presented. As the court noted in footnote 65 in *Application of Gault*, 387 U.S. 1, 38, 87 S.Ct. 1428, 1449, 18 L.Ed.2d 527, 552 n. 65 (1967) quoting the National Crime Commission Report:

> The Commission believes that no single action holds more potential for achieving procedural justice for the child in the juvenile court than provision of counsel. The presence of an independent legal representative of the child, or of his parent, is the keystone of the whole structure of guarantees that a minimum system of procedural justice requires.

The rights to confront one's accusers, to cross-examine witnesses, to present evidence and testimony of one's own, to be unaffected by prejudicial and unreliable evidence, to participate meaningfully in the dispositional decision, to take an appeal have substantial meaning for the overwhelming majority of persons brought before the juvenile court only if they are provided with competent lawyers who can invoke those rights effectively.

In this case, given Taylor's age and maturity, a separate attorney was required.

We remand to the juvenile court to appoint a separate attorney for Taylar. We do not resolve the other issues on appeal because the resolution of the issue of Taylar's relationship with her mother may have an impact on the other issues. These issues cannot be decided in isolation, for all issues raised must be considered in concert in the final decision. We order a new trial on the petition for termination.

**REMANDED.**