**IN THE COURT OF APPEALS OF IOWA**

No. 21-1769
Filed February 16, 2022

**IN THE INTEREST OF J.V.,**
**Minor Child,**

**J.K., Intervenor,**
        Appellant.

_____

        Appeal from the Iowa District Court for Madison County, Kevin Parker, District Associate Judge.


        An intervenor appeals following the denial of her various motions.
**AFFIRMED.**


        Scott L. Bandstra, Des Moines, for appellant intervenor.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Tara M. Elcock of Elcock Law Firm, PLC, Indianola, attorney and guardian ad litem for minor child.


        Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**MAY, Judge.**

This is a child-in-need-of-assistance (CINA) proceeding for J.V., a nine-year-old child. An intervenor—J.V.'s maternal grandmother—appeals a juvenile court ruling that denied her motion to modify J.V.'s placement and refused to appoint an attorney for J.V. We affirm.

**I. Background Facts and Prior Proceedings**

J.V. was born in 2012. At that time, J.V.'s mother was fourteen years old. For the first four years of his life, J.V. lived with his teenage mother in his maternal grandmother's home.[1] When J.V.'s mother turned eighteen, she and J.V. moved out of the grandmother's home. For the next several years, J.V.'s mother continued to raise J.V. Although J.V.'s father has been incarcerated at times during J.V.'s life, the father has generally maintained contact with J.V.

In June 2020, J.V.'s mother died in a car accident. Soon after, the grandmother obtained a temporary guardianship of J.V. By January 2021, though, the grandmother and J.V.'s father negotiated a dismissal of the guardianship. They agreed J.V.'s father would have sole custody of J.V. while the grandmother would have liberal visitation. J.V. transitioned to the paternal grandfather's home, where the father lived.[2]

A few months later, the State initiated the current CINA proceedings in light of the father's alleged substance use and criminal activity. The court appointed Tara Elcock to serve as both the child's guardian ad litem (GAL) and the child's attorney. Following a hearing, the juvenile court adjudicated J.V. as CINA and

---

[1] All references to J.V.'s "grandmother" are to the maternal grandmother.
[2] All references to J.V.'s "grandfather" are to the paternal grandfather.

placed him in the custody of his grandfather. The court then granted the grandmother's motion to intervene.

After the juvenile court entered its dispositional order—which again placed J.V. in the grandfather's custody—the grandmother moved to modify placement to place J.V. in her care. In the same filing, the grandmother also asked the court to appoint a separate attorney for J.V. The GAL also filed a motion to "bifurcate," that is, to appoint separate individuals to serve as the child's attorney and GAL, respectively. The court addressed these issues at a hearing that lasted three days.[3]

The court did not modify placement. Nor did the court bifurcate. The grandmother appeals.

## II. Discussion

We begin with the grandmother's claim that the juvenile court should have bifurcated the GAL and child attorney roles. *See* Iowa Code § 232.89(4) (2021). We note initially that, although the grandmother and GAL both moved to bifurcate, the juvenile court's ruling only addressed the GAL's motion. The ruling was silent as to the grandmother's. So the State suggests error is not preserved as to the grandmother's motion. We disagree. Both the GAL and the grandmother raised the same issue: Should the court bifurcate? And although the juvenile court's order only referenced the GAL's motion, the court plainly decided to not bifurcate. So we have a ruling to review on the issue presented by the grandmother. Error is preserved. *Cf. Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a

---

[3] The father was incarcerated at the time of the hearing and participated by phone.

fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

So we turn to the merits.[4] We review the juvenile court's refusal to bifurcate the GAL and child attorney roles for an abuse of discretion. *In re D.L.-M.*, No. 08-1335, 2008 WL 4571464, at *1 (Iowa Ct. App. Oct. 15, 2008). Iowa Code § 232.89(4) provides,

> The same person may serve both as the child's counsel and as guardian ad litem. However, the court may appoint a separate guardian ad litem, if the same person cannot properly represent the legal interests of the child as legal counsel and also represent the best interest of the child as guardian ad litem, or a separate guardian ad litem is required to fulfill the requirements of subsection 2.

Subsection 2 provides:

> Upon the filing of a petition, the court shall appoint counsel and a guardian ad litem for the child identified in the petition as a party to the proceedings. If a guardian ad litem has previously been appointed for the child in a proceeding under subchapter II or a proceeding in which the court has waived jurisdiction under section 232.45, the court shall appoint the same guardian ad litem upon the filing of the petition under this part. Counsel shall be appointed as follows:
> a. If the child is represented by counsel and the court determines there is a conflict of interest between the child and the child's parent, guardian, or custodian and that the retained counsel could not properly represent the child as a result of the conflict, the court shall appoint other counsel to represent the child, who shall be compensated pursuant to the provisions of subsection 3.
> b. If the child is not represented by counsel, the court shall either order the parent, guardian, or custodian to retain counsel for the child or shall appoint counsel for the child, who shall be compensated pursuant to the provisions of subsection 3.

Iowa Code § 232.89(2).

---

[4] The State argues the grandmother does not have standing as an intervenor to seek bifurcation. But we need not address that issue here, because even assuming the grandmother has standing, we conclude the juvenile court did not abuse its discretion in declining to bifurcate.

Here, the grandmother sought bifurcation because, although J.V. had expressed his desire to be placed with the grandmother, the GAL continued to recommend placement with the grandfather. The grandmother maintains this was an unacceptable conflict. The GAL also requested bifurcation, although it appears this request was made mostly as a response to the grandmother's claims of conflicting interests. Indeed, the GAL made it clear to the court that—in her view— the child "does not require bifurcation or a separate attorney." The GAL further explained:

> As [J.V.]'s [GAL] and attorney at this point, it is my job to present to the court how [J.V.] feels, what [J.V.] thinks, what [J.V.]'s wishes are. I would agree with [father's counsel] that he is a very young age, and it is not a situation where GALs have the duty to bifurcate with young children. And at this point in time, he has made his wishes known to me. We've had many conversations. I have relayed that information to the court accurately. Actually, I met with him again today, and it's pretty clear where he stands, what his feelings are. But, also, the uncertainty there is his young age, he is struggling with his mental health, and, therefore, I don't believe has the ability to accurately relay his beliefs. . . .
>
> I think at this point in time he has been provided information that he should not know. He has been talked to in a way that he should not be. And he, I believe, has been somewhat coached, and I'm concerned with how he feels at this point is directly related to those issues.

The GAL later added:

> I did state, and I will restate, that when I'm appointed as an attorney and [GAL] in a case, I don't believe that it's automatically necessary to bifurcate my role. I don't believe with young children by code or case law that it's absolutely necessary for me to bifurcate my role. I feel like a young child, especially one who has emotional distress, is not in a position to tell an attorney what he can and can't do, what he wants or does not want, but as [GAL] is able to relay that information to the court, and I have at every single point in this case. I don't believe that it is absolutely necessary that I bifurcate my role, but I also don't want to be held accountable for allegations that I'm not doing my job.

So I will leave that to the court's determination on whether or not it would be in [J.V.]'s best interest to have an attorney appointed and would request, if so, that I remain as the [GAL].

We think the GAL's comments were appropriate. As we have explained, "it appears the older, more intelligent, and mature the child is, the more impact the child's wishes should have, and a child of sufficient maturity should be entitled to have the attorney advocate for the result the child desires." *In re A.T.*, 744 N.W.2d 657, 663 (Iowa Ct. App. 2007). So we "look at the manifestation of [J.V.]'s wishes and [his] maturity" to determine if the juvenile court should have bifurcated. *See id.*; *see also id.* at 665 ("We do not hold that an attorney must always be appointed for a child in a termination. A [GAL] can, in some situations, serve a dual role as both the [GAL] and the juvenile's attorney. When, however, a [GAL] recommends a disposition that conflicts with the juvenile's wishes, the juvenile court *may*, under Iowa Code section 232.89, appoint independent counsel to represent the child in situations *where a child is of sufficient age and maturity to make an informed decision* about a potential termination of a child's relationship with his or her parents." (emphasis added) (citation omitted)).

J.V. is just nine years old. And the record is devoid of any evidence that J.V. is particularly mature for his age. Moreover, the grandmother admits J.V. feels caught in the middle between his grandfather and grandmother. This leads us to question how strong J.V.'s preferences are as he attempts to pacify the adversely-situated adults in his life. In any event, given the record before us, we cannot say the juvenile court abused its discretion in denying the motions to bifurcate.

Next, we address the grandmother's contention that the juvenile court should have admitted certain hearsay evidence. We generally review the court's

evidentiary rulings for an abuse of discretion. *See In re L.R.*, No. 13-0713, 2013 WL 4504930, at *6 (Iowa Ct. App. Aug. 21, 2013). However, "[w]e review evidentiary rulings based on hearsay evidence for correction of errors at law." *In re F.S.*, No. 06-1593, 2007 WL 3087212, at *2 (Iowa Ct. App. Oct. 24, 2007). "We will reverse an evidentiary ruling only if the record shows prejudice to the complaining party." *L.R.*, 2013 WL 4504930, at *6.

Here, the State concedes the hearsay that the grandmother sought to introduce—evidence that J.V. had said he wanted to live with the grandmother— should have been admitted under Iowa Code section 232.50(3). *See* Iowa Code §§ 232.50(3) ("At dispositional hearings under this section all relevant and material evidence shall be admitted."), .103(3) ("A hearing shall be held on a motion to terminate or modify a dispositional order except that a hearing on a motion to terminate or modify an order may be waived upon agreement by all parties. Reasonable notice of the hearing shall be given to the parties. The hearing shall be conducted in accordance with the procedure established for dispositional hearings under section 232.50, subsection 3."). But as the State points out, the grandmother suffered no prejudice because later testimony established that J.V. had expressed a desire to be placed with the grandmother. So reversal is not required.

Finally, we address the grandmother's contention that the court should have modified J.V.'s placement to place him in the grandmother's care. As the State emphasizes, J.V.'s placement was established in a dispositional order. So modification of J.V.'s placement would have required modification of the dispositional order. But Iowa Code section 232.103(2) only authorizes certain

people to move for modification of a dispositional order. Specifically, section 232.103(2) provides:

> The following persons shall be authorized to file a motion to terminate, modify, or vacate and substitute a dispositional order:
> a. The child.
> b. The child's parent, guardian or custodian, except that such motion may be filed by that person not more often than once every six months except with leave of court for good cause shown.
> c. The child's guardian ad litem.
> d. A person supervising the child pursuant to a dispositional order.
> e. An agency, facility, institution or person to whom legal custody has been transferred pursuant to a dispositional order.
> f. The county attorney

The grandmother does not fit any of these classifications. So she was not—and is not—authorized to seek modification of the dispositional order, including its placement determination. And so we decline to consider her argument.

**AFFIRMED.**

Vaitheswaran, P.J., concurs; Tabor, J., dissents.

**TABOR, Judge** (dissenting).

"The child is not merely 'along for the ride' in a child welfare proceeding . . . ."[5] Yet J.V.—who turns ten this month—was not seen or heard from at the child-in-need-of-assistance hearings to decide where he should live. Although his guardian ad litem (GAL) advocated what she believed was in his best interests, his own placement preference took a back seat. Because I believe J.V. needed a separate attorney to convey his wishes, I respectfully dissent.

While we examine the juvenile court's failure to appoint counsel for an abuse of discretion, our overall standard of review remains de novo. *In re D.L.-M.*, No. 08-1335, 2008 WL 4571464, at *1 (Iowa Ct. App. Oct. 15, 2008). As we review this case anew, we are not bound by the court's factual findings. *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). The court ruled that J.V. was "in a position to explain his wants and needs" to his GAL. But the court declined to bifurcate the child's representation, reasoning: "Another attorney is not needed or required and would only add another adult for [J.V.] to speak with and to pacify."

That rationale reveals an abuse of discretion. On the one hand, the court recognized J.V. was mature enough to explain his preferences to his GAL. But on the other hand, the court prevented the child from expressing his opinion to the court without the GAL's filter. And despite the GAL moving for bifurcation, she did not lobby for that outcome. She told the court that J.V. was "not in a position" to tell an attorney what he "wants or does not want." And that it was better for her as GAL to "relay that information to the court." On that note, she told the court:

---

[5] Ann M. Haralambie, *The Role of the Child's Attorney in Protecting the Child Throughout the Litigation Process*, 71 N.D.L. Rev. 939, 953 (1995).

> While it is clear [J.V.] has made statements that he wants to live with [the maternal grandmother and her husband,] when I ask him further why, or, what do you love most about it, or things of that nature, he makes statements such as, they feed me better, they make sure I get my homework done, they make sure that I am in bed on time.

Those reasons reflect J.V.'s preference for the routine of his grandmother's house. So it is unclear why the GAL discounted J.V.'s statements when advocating for him to stay with his paternal grandfather while his father was incarcerated. At the start of the hearings, the GAL suggested that J.V. was susceptible to being coached. But both the grandmother and her husband testified that they did not try to influence J.V.'s view on where he wanted to live.

And it is not surprising that J.V. would feel more comfortable in the home where he grew up. His grandmother was "basically a second mother by default" because his mother was only thirteen years old when she became pregnant with him.[6] They lived with the grandmother for four years, until his mother graduated from high school. And then, when his mother died in a car accident in August 2020, J.V. returned to his grandmother's home for several months.

On this record, "[t]he fundamental duty of the guardian ad litem conflicts with the traditional role of the lawyer." *In re A.T.*, 744 N.W.2d 657, 665 (Iowa Ct. App. 2007). The court should have appointed a separate attorney to advocate for J.V.'s placement preference.

---

[6] Testifying from prison, the father acknowledged that he was twenty years old when he had sexual intercourse with J.V.'s mother. His actions led to his conviction for third-degree sexual abuse.