# IN THE COURT OF APPEALS OF IOWA

No. 21-1961
Filed May 11, 2022

IN THE INTEREST OF C.P. and N.P.,
Minor Children,

L.P., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Magdalena Reese of Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

Considered by May, P.J., and Greer and Chicchelly, JJ.

**MAY, Presiding Judge.**

A mother appeals the termination of her parental rights to her children, C.P. and N.P.[1]  She challenges the statutory grounds, claims termination is not in the children's best interests, contends the juvenile court should have applied a permissive exception to termination to instead establish a guardianship, and argues the juvenile court should have bifurcated the guardian ad litem (GAL) and attorney role for N.P.'s representation.  We affirm.

We review termination proceedings de novo.  *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020).  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  We consider: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination.  *Id.* at 472–73.  Then we address any additional claims raised by the parent.  *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

We first address the mother's challenge to the statutory grounds for termination.  Here, the juvenile court terminated the mother's rights to C.P. and

---

[1] The father consented to termination of his parental rights.  He does not appeal.

N.P. pursuant to Iowa Code section 232.116(1)(f) (2021). Paragraph (f) authorizes termination when:

>    (1) The child is four years of age or older.
>    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). The mother only challenges the last element, whether the children can be safely returned to the mother's care. See *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

We conclude the children cannot be safely returned to the mother. This is in part because of the mother's methamphetamine use. *See In re A.D.*, No. 21-1562, 2022 WL 246227, at *1 (Iowa Ct. App. Jan. 27, 2022) (recognizing "[a] parent's methamphetamine use, in itself, creates a dangerous environment for children" (alteration in original) (citation omitted)). She has a long history with the drug.[2] She tested positive for methamphetamine as recently as May 18, 2021.[3] The mother missed fifteen appointments with her substance-abuse counselor between March 10, 2021 and September 30, 2021. During this time, she failed to complete eighteen drug screens ordered by her counselor.[4] "We presume these

---

[2] This family was subject to a prior child-in-need-of-assistance proceeding, and the mother's methamphetamine use was also a concern during that proceeding.

[3] The termination hearing occurred over two days on October 28 and November 18, 2021.

[4] She also provided two urine samples that were not accepted due to being outside the accepted temperature range.

missed tests would have been positive for illegal substances." *In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) (collecting cases noting missed tests are presumed positive). And "[a] parent's methamphetamine use, in itself, creates a dangerous environment for children." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020). In addition to the mother's substance abuse, the mother also struggles with domestically-abusive relationships. *Cf. In re A.M.*, No. 19-1735, 2020 WL 825975, at *3 (Iowa Ct. App. Feb. 19, 2020) ("If a parent 'has gained very little insight' over the course of the proceedings about domestic violence and the danger it poses to the family, returning young children to that parent's care goes against their welfare." (citation omitted)). And she advocated for a domestically-abusive boyfriend to have contact with the children, suggesting she does not appreciate the danger that domestic abusers pose to her children. So we conclude the children could not be safely returned to the mother, and a statutory ground authorizing termination is satisfied.

Next, we consider whether termination is in the children's best interests. When making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Termination is in the children's best interests. C.P. has been diagnosed with autism and is non-verbal. So he requires a high level of care. N.P. struggles emotionally and has reported self-harm. And the mother simply cannot provide the children with the care they require. So we conclude termination is in their best interests.

Next, we consider whether any permissive exceptions should preclude termination. *See* Iowa Code § 232.116(3). However, the burden of establishing an exception rests with the parent. *See A.S.*, 906 N.W.2d at 476. Here, the mother asks us to apply an exception to termination due to her bond with the children. *See* Iowa Code § 232.116(3)(c). We understand N.P. has expressed her desire to return to the mother's care. But we also believe young N.P.—who was only nine years old at the time of the termination hearing—cannot fully appreciate the dangers of returning to the mother. We do not think the parent-child bonds are so strong as to overcome the dangers posed to these children. Rather, we agree with the juvenile court that "[w]hile termination is likely to cause harm, that harm does not outweigh the harm caused by the mother's inability to address her substance use, maintain a safe and appropriate home, or to meet the needs of her children." So we decline to apply this exception.

The mother also asks us to apply section 232.116(1)(a) to forgo termination and establish a guardianship instead because the children were in the maternal aunt's legal custody. But we note the juvenile court never ruled on her request to establish a guardianship as an alternative to termination. "If a party presents an issue to the court, but the court does not rule on that issue, 'the party raising the issue must file a motion asking the court for a ruling in order to preserve the issue

for appeal.'" *In re B.N.*, No. 14-1640, 2015 WL 582091, at *1 (Iowa Ct. App. Feb. 11, 2015) (citation omitted). And the mother did not file a motion requesting the court address her request to establish a guardianship as an alternative to termination. So we conclude the mother's claim is not preserved for our consideration. Nonetheless, we note two points: (1) "a guardianship is not a legally preferable alternative to termination," *A.S.*, 906 N.W.2d at 477 (citation omitted), and (2) it is not clear to us from the record that the maternal aunt would be willing to take on the role of guardian.

Finally, we address the mother's claim that, as to N.P., the juvenile court should have bifurcated the GAL and child-attorney roles because—although N.P. expressed a desire to return to the mother's care—the GAL advocated for termination. Unlike the rest of our review, "[w]e review the juvenile court's refusal to bifurcate the GAL and child attorney roles for an abuse of discretion." *In re J.V.*, No. 21-1769, 2022 WL 470335, at *2 (Iowa Ct. App. Feb. 16, 2022).

Iowa Code § 232.89(4) provides,

> The same person may serve both as the child's counsel and as guardian ad litem. However, the court may appoint a separate guardian ad litem, if the same person cannot properly represent the legal interests of the child as legal counsel and also represent the best interest of the child as guardian ad litem, or a separate guardian ad litem is required to fulfill the requirements of subsection 2.

Subsection 2 provides:

> Upon the filing of a petition, the court shall appoint counsel and a guardian ad litem for the child identified in the petition as a party to the proceedings. If a guardian ad litem has previously been appointed for the child in a proceeding under subchapter II or a proceeding in which the court has waived jurisdiction under section 232.45, the court shall appoint the same guardian ad litem upon the filing of the petition under this part. Counsel shall be appointed as follows:

a. If the child is represented by counsel and the court determines there is a conflict of interest between the child and the child's parent, guardian, or custodian and that the retained counsel could not properly represent the child as a result of the conflict, the court shall appoint other counsel to represent the child, who shall be compensated pursuant to the provisions of subsection 3.

b. If the child is not represented by counsel, the court shall either order the parent, guardian, or custodian to retain counsel for the child or shall appoint counsel for the child, who shall be compensated pursuant to the provisions of subsection 3.

Iowa Code § 232.89(2).

Here, the mother sought to bifurcate the GAL and child-attorney roles for N.P. part way through the second day of the termination hearing after a caseworker testified that N.P. had expressed a desire to return to her mother's care.[5] In this instance, we do not think the juvenile court abused its discretion when it denied the eleventh-hour motion to bifurcate.

As we have explained, "it appears the older, more intelligent, and mature the child is, the more impact the child's wishes should have, and a child of sufficient maturity should be entitled to have the attorney advocate for the result the child desires." *In re A.T.*, 744 N.W.2d 657, 663 (Iowa Ct. App. 2007). So we "look at the manifestation of [N.P.]'s wishes and her maturity" to determine if the juvenile court should have bifurcated. *See id.*; *see also id.* at 665 ("We do not hold that an attorney must always be appointed for a child in a termination. A [GAL] can, in some situations, serve a dual role as both the [GAL] and the juvenile's attorney. When, however, a [GAL] recommends a disposition that conflicts with the juvenile's

---

[5] The State argues the mother does not have standing to seek bifurcation. But we need not address that issue here, because even assuming the mother has standing, we conclude the juvenile court did not abuse its discretion in declining to bifurcate.

wishes, the juvenile court *may*, under Iowa Code section 232.89, appoint independent counsel to represent the child in situations *where a child is of sufficient age and maturity to make an informed decision* about a potential termination of a child's relationship with his or her parents." (emphasis added) (citation omitted)). N.P. was nine years old at the time of the termination hearing. And nothing in the record suggests N.P. is particularly mature for her age. On the contrary, the record suggests N.P.'s age and level of maturity made it difficult for her to understand the complexities and nuances of her mother's struggles and the potential danger her mother posed to her. So we conclude the juvenile court did not abuse its discretion when it denied the motion to bifurcate.[6]

**AFFIRMED.**

---

[6] We note the combined GAL and child-attorney informed the court of N.P.'s desires to return to the mother's care. So N.P.'s desires were communicated to the court.