**IN THE COURT OF APPEALS OF IOWA**

No. 22-0967
Filed August 31, 2022

**IN THE INTEREST OF T.B., J.B., and J.B.,**
**Minor Children,**

**J.B., Mother,**
    Appellant

**T.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Allamakee County, Linnea M.N. Nicol, District Associate Judge.

Parents appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Sandra Benzschawel of Meyer, Lorentzen & Nelson, Decorah, for appellant mother.

Charles R. Kelly of Charles Kelly Law Office, P.C., Postville, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Whitney L. Gessner of Gessner Law Office, Postville, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother and father separately appeal the termination of their parental rights. First, both parents argue the court wrongly found termination was in the children's best interests. Second, the parents claim the court should have applied a statutory exception to termination. They also contend the court should have granted a guardianship with the maternal grandmother in lieu of termination. Finally, the parents assert the role of guardian ad litem (GAL) and attorney for one child should have been bifurcated because the eldest child opposed termination. We find that termination was in the best interest of the children, the court properly declined to apply a statutory exception, and a guardianship was not the appropriate permanency option for these children. We also find the court did not abuse its discretion in declining to bifurcate the role of the GAL and attorney for the eldest child.[1] We affirm.

I.      **Background Facts & Proceedings**

The Iowa Department of Human Services (DHS) became involved with this family in June 2020 based on concerns of domestic abuse and drug use. In particular, there were concerns about the mother's use of methamphetamine and the father's domestic violence against the mother. The father moved into an apartment while the mother stayed in the familial home. The move was necessitated, in part, due to a no-contact order (NCO) in place between the parents. The parents struggled to comply with the NCO for at least the first year

---

[1] The GAL and attorney filed a responsive brief but does not appeal from the termination order.

of the case. The children, T.B.,[2] age twelve, J.B. and J.B., twins, age six, were adjudicated children-in-need-of-assistance (CINA) on July 24, 2020, pursuant to Iowa Code sections 232.2(6)(c)(2) and (n) (2020). The children remained in their mother's custody at the time of adjudication.

T.B. was formally removed from parental custody on September 24 due to a physical altercation between T.B. and the mother. T.B. was placed with an adult sibling. The two younger children remained with the mother, although the maternal grandmother moved in with the family to assist the mother. The grandmother left the home in October due to disagreements with the mother. Methamphetamine and drug paraphernalia were found in the mother's home in October. As a result, the twins were placed with a maternal uncle and his girlfriend. T.B. moved to the same home. The two younger children were formally removed from parental custody on December 10. All three children have remained together in this relative placement since then.

T.B. has struggled throughout the case with mental-health issues. In particular, T.B. was hospitalized in May 2021 due to suicidal ideation. The child was hospitalized again in October 2021 for the same reason. Despite those concerns, testimony was consistent at trial that T.B. has exhibited significant growth since removal. T.B. excelled academically and expressed a desire to stay at the current school district. At the termination hearing, T.B. requested to live with the father in Cresco where T.B. currently attends school. But T.B. also

---

[2] T.B. used the name F.B. at some period during this case. For the purpose of this appeal, we refer to the oldest child as T.B., the child's legal name at the time of our record on appeal.

testified that it was T.B.'s priority to stay with T.B.'s two younger siblings and that the two younger children should remain in the current relative placement.

J.B. and J.B. are autistic, requiring an individual education plan (IEP) at school. Caseworkers testified to their growth since case initiation, both behaviorally and academically. The twins have begun to demonstrate some behavioral problems recently, due at least in part to ongoing instability caused by this case.

The mother continues to struggle with substance abuse. Despite DHS making drug testing readily available, the mother missed forty-seven opportunities to test. She testified that she missed the tests due to issues with her memory[3] and because she simply did not want to submit to testing. She last tested positive for methamphetamine in November 2021. She began mental-health and substance-abuse treatment in January 2022, the same month the termination proceedings convened. She claimed to have been three weeks sober at the second day of the hearing on February 17, which illustrates that she was not sober on the first day of the hearing on January 21. The mother also struggles with mental-health issues, including depression, anxiety, and post-traumatic stress disorder (PTSD). She currently works at a restaurant in Harper's Ferry, although she still owns the familial home in Waukon.

The father has been in and out of jail throughout the case. He was arrested in October 2020 for violating the NCO. He was in jail until December,

---

[3] The mother claims to suffer from fibromyalgia that affects her short-term memory. She testified that it has caused her to miss her children's events and appointments.

was briefly released, and then returned to jail the same month. He remained in jail until April 2021, when he was released to a halfway house. He was revoked from the halfway house in July and returned to jail. The father was again placed at a halfway house in August but was unsuccessfully discharged back to jail in November. He was released from jail in December 2021 and remains on probation. He testified that he needs to complete the Iowa Domestic Abuse Program (IDAP) before he will be discharged from probation. He currently has housing and draws income from his veteran's benefits.

The parents' visits have remained fully supervised. Some of these visits have ended early due to inappropriate conversations between the parents and children, largely focused on denigrating the placement and DHS. Testimony indicated bonds between the parents and children, although the strength of the bonds depended on the particular relationship between each child and parent. T.B., for example, indicated a closer relationship with the father. In contrast, J.B. and J.B. are generally closer to the mother.

The maternal grandmother lives in Wisconsin. She intervened at the termination hearing and expressed her wishes to serve as a guardian for the children.[4] She plans on moving to Iowa only if granted the guardianship. The grandmother has supervised visits for the mother. The DHS caseworker assigned to the case expressed concerns about the grandmother covering for the mother while supervising visits.

---

[4] The intervener has not appealed.

The State filed petitions to terminate the parents' parental rights to all three children on December 28, 2021. The hearing was conducted on January 21, February 17, and March 10, 2022. The parents requested a six-month extension, or, in the alternative, that a guardianship with the maternal grandmother be established for all three children. Both parents and the grandmother moved to bifurcate the role of GAL and attorney for T.B. due to T.B. revoking consent to termination of the parents' parental rights between the first and second day of the termination hearing.[5] The court denied the motion, finding the GAL was adequately representing T.B.'s wishes. The court terminated the parent's parental rights under Iowa Code section 232.116(1)(f) (2021). Both parents appeal.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Termination of parental rights follow a three-step process. First, we must determine whether a ground for termination exists under section 232.116(1). *Id.* at 39. Second, we consider whether termination is in the best interests of the children. *Id.* Third, we consider whether an exception found in section 232.116(3) precludes termination. *Id.* Because the parents do not contest whether a ground for termination exists, we may skip that step. *See id.* at 40.

---

[5] In addition to an attorney and guardian ad litem, a CASA (court appointed special advocate) was appointed for the children and recommended termination of both parents' parental rights.

**III.     Discussion**

The parents raise several claims on appeal.  First, they contend the children should have been placed in a guardianship with the maternal grandmother in lieu of termination of their parental rights.  Subsumed in that argument, the parents claim that termination is not in the best interests of the children and that the court should have applied a statutory exception.  Finally, they claim that the role of GAL and attorney for T.B. should have been bifurcated.

**A.     Best Interests of the Children**

The parents allege termination is not in the best interests of the children. When examining this issue, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (quoting *P.L.*, 778 N.W.2d at 41).  Having considered the relevant factors, we determine that termination is in the best interests of the children.

Neither parent has made significant progress on the issues that brought these children to the attention of the court.  The mother missed forty-seven drug tests, often times simply because she chose not to participate.  She only began mental-health and substance-abuse treatment in January, the same month as the termination hearing began.  She also testified that she was three weeks

sober on February 17, the second day of the hearing, indicating that she was not sober the first day of the hearing which began on January 21. The mother has signed a release that only allows her treatment facility to inform DHS that she is a current patient, hindering the agency's ability to verify any progress.

Similarly, the father has made little progress since this case's inception. He has spent about fourteen of the nineteen months of this case incarcerated for violating the NCO prohibiting contact with the children's mother. He was unsuccessfully discharged from the halfway house twice and has not yet completed the IDAP classes necessary to complete his probation. He informed caseworkers during his first attempt at IDAP that he did not believe the program would be beneficial. As a result, caseworkers believed the father was merely going through the motions and not taking responsibility for is actions. He will not begin therapy until June.

The children have demonstrated growth in their current placement. J.B. and J.B. have improved academically and behaviorally. While J.B. and J.B.'s behavior has started to regress somewhat, that is due at least in part to the ongoing instability caused by the case. Similarly, T.B. is excelling academically.

We also note that the placement family, a relative, is willing to adopt all three children. *See* Iowa Code § 232.116(2)(b). This will allow the children to remain together.[6] *See In re T.J.O.,* 527 N.W.2d 417, 420 (Iowa Ct. App. 1994)

---

[6] The parents contend termination will separate the three children from their adult step-siblings. However, T.B. indicated a lack of recent communication with the step-siblings. An adult step-brother testified to last visiting with T.B. in September 2020, despite the knowledge that the placement would not prevent his contact. Further, his visits with J.B. and J.B. are normally only five to ten

("[W]herever possible brothers and sisters should be kept together."). Given the lack of progress the parents have made in addressing their substance abuse and domestic violence, particularly when compared to the progress the children have made in their current placement, termination is in the children's best interests.

### B. Statutory Exceptions to Termination

The parents allege multiple statutory exceptions to termination found in section 232.116(3) apply in this case. The exceptions "are permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted). "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* (citation omitted). The parents bear the burden of proving the applicability of an exception. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

### Relative Placement—Iowa Code section 232.116(3)(a)

The parents claim that the children's placement with a relative should preclude termination. *See* Iowa Code § 232.116(3)(a). We disagree. First, our supreme court has been clear that "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *A.S.*, 906 N.W.2d at 475 (citation omitted). The parents have a tense relationship with the children's placement. Both the

minutes long. The children have historically had minimal contact with the adult step-siblings.

mother and father have made derogatory statements to the children about the placement, the content of which we do not repeat in this opinion. Forcing the children to continue to navigate this tumultuous relationship is not in their best interest.

**Objection to Termination—Iowa Code section 232.116(3)(b)**

The combination of all of the parents' arguments under one heading makes it difficult to ascertain whether the parents raise the exception detailed in Iowa Code section 232.116(3)(b). This issue appears in the parents' brief only in relation to the bifurcation issue. And the juvenile court found that the child did not object to the termination of his parents' rights, conceding that the best interests of the siblings required them to remain together in the relative placement. Given the lack of authority or argument cited by either parent with respect to this exception, we decline to address it. Because we cannot play the role of advocate, we decline to address this exception. *See In re E.D.*, No. 16-0829, 2016 WL 4379382, at *7 (Iowa Ct. App. Aug. 17, 2016); *see also Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume.").

**Parent-Child Bond—Iowa Code section 232.116(3)(c)**

The parents also contend their bond with the children should prevent termination. *See* Iowa Code § 232.116(3)(c). Testimony at trial indicated that the mother shares a bond with J.B. and J.B., while T.B. tends to be closer to the father. T.B. has only recently begun attending visits with the mother again.

Some evidence suggests this was to protect the younger siblings. Caseworkers indicated that the father tends to focus on T.B. during visits.

A close bond on its own is insufficient to avoid termination. Rather, there must be clear and convincing evidence that the bond is close enough that "termination would be determinantal to the child due to the closeness of the parent-child relationship." *Id.* The record supports that since removal the twins have experienced significant growth. Thus, termination will not be detrimental to J.B. and J.B.

T.B. is twelve years old. T.B. struggled throughout the case with feelings of being caught in the middle of the process, evident by this child's shifting viewpoint on termination during trial. T.B. is close with the two younger siblings, and testified to a desire to keep all the siblings together. While we acknowledge and meaningfully consider T.B.'s bond with the father, termination remains in T.B.'s best interests. T.B. is excelling in the current placement. And T.B. also needs permanency, evident by the ongoing struggles with mental health. Of particular note is T.B.'s preference to stay with the two younger siblings. Given the lack of progress the father has made on his domestic violence and the other noted factors, we do not find termination to be detrimental to T.B. The juvenile court properly declined to apply this statutory exception to any of the three children.

### C. Guardianship

The parents suggest that the juvenile court should have instituted a guardianship with the maternal grandmother pursuant to Iowa Code section 232.104(2)(d)(1). That section permits a court to decline to terminate

parental rights and instead place the children under a guardianship when: (a) termination would not be in the child's best interests, (b) services were offered to correct the situation that led to the child's removal, and (c) the child cannot be returned home. Iowa Code § 232.104(4).

Here, as noted above, termination is in the children's best interests. A guardianship with the maternal grandmother is not appropriate in this case. First, the DHS caseworker assigned to the case testified to concerns that the grandmother covered for the mother during visits. And while the grandmother lived with the mother and the two youngest children early in the case, she left due to disagreements with the mother. Concerns also exist over the grandmother's ability to manage the three children and financial ability to care for them. Generally, "a guardianship is not a legally preferable alternative to termination" because it lacks permanency. *A.S.*, 906 N.W.2d at 477 (citation omitted). That is particularly the case where, as has been demonstrated above, the children need permanency. The juvenile court properly declined to establish a guardianship in lieu of termination.

### D. GAL And Attorney Bifurcation

The parents claim that the role of GAL and attorney for T.B. should have been bifurcated because the GAL and attorney's recommendations conflicted with T.B.'s wishes. Iowa Code section 232.89(4) permits the same person to serve as a GAL and the child's counsel. "However, the court may appoint a separate guardian ad litem, if the same person cannot properly represent the legal interests of the child as legal counsel and also represent the best interests of the child as guardian ad litem." Iowa Code § 232.89(4). We review a juvenile

court's ruling denying a motion to appoint separate counsel for a child for an abuse of discretion.  *In re A.T.*, 744 N.W.2d 657, 665 (Iowa Ct. App. 2007).

Here, a conflict did not prevent T.B.'s GAL and attorney from representing T.B.'s wishes.  T.B. did not object to termination at the first day of hearings.  At the beginning of the second day, the GAL and attorney informed the court that T.B. was now objecting to termination.  T.B. indicated a preference for the GAL and attorney remaining as T.B.'s GAL and attorney.  For the duration of the trial, the GAL and attorney asked open-ended questions rather than ones angled towards termination.  And the GAL and attorney expressly informed the court that her position matched T.B.'s—that is, a guardianship should be established.  Moreover, the court provided T.B. an opportunity to testify.  That testimony was consistent with the GAL and attorney's statements indicating T.B. felt caught up in the process and had conflicting feelings about the desired outcome.  The court did not abuse its discretion in declining to bifurcate the GAL and attorney's roles.

**AFFIRMED ON BOTH APPEALS.**